[No. G015114. Fourth Dist., Div. Three. Aug. 31, 1994.]

THOMAS READ MERRILL, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party In Interest.

## COUNSEL

Stewart & Barnett, John D. Barnett and William J. Genego for Petitioner.

No appearance for Respondent.

Michael R. Capizzi, District Attorney, Maurice L. Evans, Chief Assistant District Attorney, Wallace J. Wade, Assistant District Attorney, Kathleen M. Harper and Eric W. Snethen, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**SILLS, P. J.**—Two men—one White, one Black—robbed a coin store in Newport Beach and murdered two people in the process. The police arrested Eric Wick, who is White, and Thomas Read Merrill, who is Black. In a lineup conducted before their joint preliminary hearing, eyewitnesses positively identified Eric Wick, who had already admitted to the police that he committed the crime. But another witness emphatically denied that Merrill was the Black man he saw, a fact which was not disclosed to Merrill's defense team until long after he was convicted.

Prosecutors are required to inform defense lawyers of any and all evidence which points to innocence. This prosecutor did not. His attempt to suppress the witness's refusal to identify Merrill eventually came to light, but much too late to do Merrill any good. The result was a great waste of time because a new trial had to be ordered. The issue remains, however, whether a new trial alone is sufficient to remedy the error. Must Merrill receive a new preliminary hearing as well?

### FACTS

### I

An armed robbery took place at the Newport Coin Exchange in March 1989. At the time Marlyn Oates was approaching the coin shop to meet her husband, when she saw an unknown man holding a shotgun inside the glass entryway. She fled towards two men who were approaching the shop, one of whom was George Zumbrunn, who, at that moment, caught a glimpse of Eric Wick standing inside with a shotgun. The three ran for cover as they heard several shots.

An officer arrived within minutes and found Renee King, wife of the store owner, and Clyde Oates dead from gunshot wounds—not from a shotgun,

but from a semiautomatic pistol. William King, the store's owner, was severely wounded as well, but alive. En route to the hospital, King told Gregory Rasore, another police officer, that the crime had been committed by two men, one White and one Black. King said "Tom" had shot him, and Tom was Black.[1] Marlyn Oates also told Rasore she had seen two men inside the store; one was White and one was Black. Papers were found on the counter bearing the name, Eric *Watt*, but listing Wick's phone number as Watt's.

Coincidentally, on the afternoon of the robbery, Fenn Olsen, a baker for a neighboring business, was in the parking area behind the Newport Coin Exchange examining the paint on a friend's car. He noticed two men standing nearby who appeared to be breaking into a white Chevy Nova. A photograph taken of Wick's car was later shown to Olsen, who testified it appeared to be the same as the car he saw that day in the parking area.

Wick was arrested at his father's home in Nevada in June 1989 and the murder weapon was found in his car parked outside. He promptly admitted to the police that he committed the crime—"I did it. I'm going to fry."—but never insinuated there was anyone else with him during its commission. Merrill was not arrested until six months later.

These two men had been best friends and lived in the same barracks at a military base close to the scene of the crime. Merrill's preliminary hearing was conducted jointly with Wick's, and both defendants were bound over for trial. At trial, Zumbrunn identified Merrill as the second robber, which directly contradicted his earlier statement to police that there was only one perpetrator: Wick.

In addition, the prosecution added a new witness against Merrill: James Brady, a mutual friend of Wick and Merrill. He was a military buddy of the two men, and swore he had been privy to conversations occurring a month or so before the crime in which Wick and Merrill planned a robbery murder just like the one that actually occurred. Later, after Wick was arrested and confessed to the police that he had committed the murders, Brady visited him in jail. Wick confided in him during one of these visits that he was not alone when the crime occurred. He had accompanied a friend to a "business" meeting which "got out of hand." This friend, Wick said, was connected to the "mob." Merrill fit all other aspects of the description Wick gave of the confederate. Guilty verdicts were returned against both men in July 1991.

---

[1]Because of massive head injuries, King could not remember anything of that day's events at trial; his statements were admitted through Rasore's testimony.

At sentencing, Merrill received concurrent sentences of life imprisonment without possibility of parole for the two murders. Wick's sentence,[2] however, was substantially less in that it permitted a chance for parole. This lesser term was only possible after the prosecution moved to dismiss the special circumstance allegations against Wick, but not against Merrill. The trial court accepted the prosecutor's reason for this disparity to be the evidence indicating Merrill was the actual killer.

While Merrill's appeal was pending, he petitioned the trial court for a writ of habeas corpus and requested a new trial because he had learned Olsen had *refused* to identify him as one of the two men he saw the day of the robbery. In his declaration Olsen emphasized that his refusal was not just a failure of recollection or uncertainty of identification; he was certain that Merrill was *not* one of the two men. He was never asked—by *either* party—at the trial whether Merrill was one of the two men he saw that day.[3] He was adamant that he had told the prosecution Merrill was not one of the men before any

---

[2] Wick received concurrent indeterminate sentences of 25 years to life, plus 11 years for the attempted murder and a consecutive year for the conspiracy to commit the crime. The disparity between the two sentences only fueled the dissatisfaction felt by individuals connected with the case. William King felt there must have been a "secret deal" to warrant the repeated technical advantages he sensed Wick received throughout the case, such as the dismissal of the original information charging only Wick (in order to file the joint pleading against both Wick and Merrill) and the failure by the prosecution to ask for the death penalty. His suspicions were expressed as allegations in the hearing on the petition below, although the lower court specifically rejected some of them, and refrained from ruling on others as not pertinent.

[3] According to Olsen, the prosecutor tried to coach him into saying his inability to identify Merrill was due to an uncertain memory, failure to adequately observe the men or even a mistake. After the prosecutor's alleged attempts to dissuade Olsen proved unsuccessful, the deputy district attorney and investigator requested Olsen not to "volunteer" this information on the stand. However, both the prosecutor—in a declaration submitted in the hearing on the writ—and his investigator denied this ever occurred. The court conducting the hearing specifically refused to consider Olsen's allegations of this coaching, asserting the issue was irrelevant to the determination of the petition. The court went so far as to "ma[ke] it clear . . . that this court never reached those issues. This judgment was overturned because of *Brady* [v. *Maryland* (1963) 373 U.S. 83 (10 L.Ed.2d 215, 83 S.Ct. 1194)] error, which is different than finding that Mr. Robinson was responsible in any way for what happened. And the court didn't make that finding, didn't reach those issues. So this judgment was not overturned in whole or in part by any conduct of Mr. Robinson . . . ."

The trial court refused to resolve this factual dispute because it was not pertinent to the specific issue before it. Nonetheless, the facts alleged, if true, present an appalling picture of official malfeasance. Private parties have found themselves embroiled in litigation over spoliation of evidence based on much less than that alleged by Olsen. (See, e.g., *Velasco* v. *Commercial Bldg. Maintenance Co.* (1985) 169 Cal.App.3d 874 [215 Cal.Rptr. 504] [janitor service sued for spoliation for negligently throwing away bottle fragments in paper bag]; *Thor* v. *Boska* (1974) 38 Cal.App.3d 558, 565 [113 Cal.Rptr. 296] [doctor's admission of negligence in medical malpractice case and retention of only copies of original records resulted in

court hearing, *yet he was never called to testify at the preliminary hearing by either side* and was never asked the crucial question at the trial.

At the hearing on Merrill's petition for habeas corpus and accompanying motion for new trial, the prosecution admitted Olsen's emphatic denial of an identification at a subsequent in-person lineup *should* have been delivered to the defense, but said, in essence, no harm, no foul. Olsen's refusal to identify Merrill was only cumulative to the information the defense already had.

Merrill's attorneys claimed Olsen's testimony was much more important to their case than that. They argued that the trial evidence was overwhelming against Wick, but minimal against Merrill. The only identification of him was by Zumbrunn, who had been uncertain not only about how many culprits there were, but also uncertain about their race and physical descriptions. King's statements only circumstantially connected Merrill to the scene, and they were only given while King was completely delirious. Merrill's lawyers contended their attack on Zumbrunn's identification would have been successful had they known Olsen *emphatically denied* that Merrill was one of the two suspects. And because they were not told about Olsen's adamant refusal to identify Merrill, they only focused on his testimony about the car, not about the individuals he might have seen.

The trial court found the prosecution failed to disclose material exculpatory evidence, a violation of the dictates of *Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]. Once this was established, the prosecution wisely chose not to oppose the attendant motion for new trial, and the court below issued the writ and granted a new trial.

Merrill then sought an order setting aside the information, which would grant him a new preliminary hearing without Wick in attendance. He based

---

miscarriage of justice because admission was not specific enough to cover the disputed issue and the copies were glaringly inaccurate].) If anything, a higher standard of conduct is expected from prosecutors than private parties entrusted with evidence pertaining to purely civil disputes. (*Berger* v. *United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, 1321, 55 S.Ct. 629] [a prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is *not that it shall win a case, but that justice shall be done* . . . ."]; italics added.)

We do not wish to imply that this is the normal way prosecutions are conducted by the district attorney's office. It is not. In our experience, this type of conduct seems isolated to a single former trial deputy.

this request on the denial of a substantial right—the right to have all potentially exculpatory evidence known to the prosecution given to him prior to the original preliminary hearing. The court, however, concluded that even if that exculpatory evidence had been presented to the magistrate at the preliminary hearing, probable cause was still established by King's spontaneous—even if delirious—statements that "Tom" shot him and Tom was a Black man. Bearing in mind that only coincidence actually connected the men Olsen saw in the alley that day to the crime, the trial court ruled a new preliminary hearing was not necessary.

Following the trial court's denial of the nonstatutory motion to set aside the information, Merrill filed a petition for an alternative and peremptory writ of prohibition with us, contending such an error requires reversal without any further showing. We deny the petition.

Discussion

II

Merrill contends the trial court erred when it applied the test we laid down in *Stanton* v. *Superior Court* (1987) 193 Cal.App.3d 265 [239 Cal.Rptr. 328], which required him to show prejudice from the denial of the substantial right at his original preliminary hearing before a new hearing was warranted. Arguing that *People* v. *Coleman* (1988) 46 Cal.3d 749 [251 Cal.Rptr. 83, 759 P.2d 1260] established a single standard which automatically grants a new preliminary hearing whenever a substantial right is denied, he argues that he is entitled to that new hearing.

Because disclosure of exculpatory evidence is a substantial right, he contends the information must be set aside.

Whichever test is controlling—either *Stanton* or *Coleman*—we must first decide whether the prosecution failed to disclose *material* evidence beneficial to the defense. If the information withheld from the defense was substantial and material, then the appropriate remedy must be crafted.

Merrill's defense at trial was mistaken identity. Evidence that a witness eliminated Merrill as the man seen in the vicinity of the crime was of tremendous value. At trial, codefendant Wick never testified, yet cast the blame on Merrill as the "heavy" in their criminal duo through statements Wick had earlier made to Brady and to the police. Wick essentially admitted his guilt of the robbery, leaving only the issue of the identity of the actual killer to the jury. The only evidence connecting Merrill was Zumbrunn's

equivocal and inconsistent identification and King's delirious statements. In contrast, the preliminary hearing magistrate only heard Wick's original confession to the police, and then King's curt statements were added to Zumbrunn's belated identification to point the finger of suspicion at Merrill. The magistrate never knew of either Brady's or Olsen's testimony, much less Wick's statements to Brady, but, based on the evidence presented at that hearing, found that probable cause was established that both Wick and Merrill had committed the robbery murder.

■ Rules of ethical conduct for attorneys prohibit suppression of evidence that they have a "legal obligation" to disclose. (Rules Prof. Conduct, rule 5-220.) In addition, prosecutors have a higher legal obligation to divulge "substantial material evidence favorable to the accused." (*People* v. *Ruthford* (1975) 14 Cal.3d 399, 405-406 [121 Cal.Rptr. 261, 534 P.2d 1341].) Fundamental fairness requires no less.

■ Evidence that Olsen had emphatically refused to identify Merrill as one of the men in the vicinity of the robbery murder was exculpatory evidence for Merrill. It constituted substantial material evidence on the issue of guilt. Failure to disclose it violated the mandates of *Ruthford* and *Brady*. Whether that failure was intentional or negligent is irrelevant; its occurrence undermines the public's confidence in the criminal justice system and creates an impression that our government officers are our worst enemies, not our public servants. (Cf. *Berger* v. *United States*, *supra*, 295 U.S. at p. 88 [79 L.Ed. at p. 1321].) Justice was not done here. The error was substantial and material.

### III

■ We turn now to the question of the appropriate remedy for this violation. Merrill contends he *must* be granted a new preliminary hearing because the remedy for a deprivation of a substantial right at a preliminary hearing *is* dismissal of the information, relying on *People* v. *Coleman, supra*, 46 Cal.3d at page 773. Merrill argues the trial court erred by applying the standard articulated in *Stanton* v. *Superior Court, supra*, 193 Cal.App.3d 265, which requires the reviewing court to *add* the nondisclosed information to the evidence which the original magistrate heard, and then retest the sum for probable cause. Merrill contends the *Coleman* test is preeminent over the *Stanton* rule, and he must receive a new preliminary hearing upon establishing he was denied a substantial right.

The *Coleman* rule, by its own language, is only applicable to a timely motion brought under Penal Code section 995.[4] ■ "The standard of review for determining whether a substantial right was denied at a preliminary examination was set forth in [*People* v.] *Pompa-Ortiz* [(1980)] 27 Cal.3d [519] at page 529 [165 Cal.Rptr. 851, 612 P.2d 941], in which we explained that if a defendant makes a timely motion in the trial court to set aside the information and shows that a substantial right was denied, the information must be set aside without a showing of prejudice. *In a postconviction context, however*, when an appellate court reviews the *denial* of a motion to dismiss *under section 995*, irregularities in the preliminary examination require reversal only if the defendant can show that . . . he was otherwise prejudiced. . . ." (*People* v. *Coleman, supra*, 46 Cal.3d at p. 773, italics added.)

■ Merrill argues he is in the same situation as any defendant who has not been convicted because the trial court granted his motion for new trial. But the sequence of events is important here. He proved he was denied a substantial right *before* he was granted the new trial. It was that very deprivation which entitled him to that remedy. But that does not change either the substance or the purpose of his motion for a new preliminary hearing. He wants to set aside the information, after conviction, because of an error not visible within the "four corners" of the preliminary hearing transcript. Thus, Merrill correctly recognized his was a nonstatutory motion to dismiss, not a motion under Penal Code section 995.

*Coleman* does not provide the remedy for *all* situations involving the denial of a substantial right. It focused on the remedies available to those bringing timely motions under Penal Code section 995 or appellate review following a denial of one. Even though the motion in *Coleman* resulted in an evidentiary hearing, it was still a Penal Code section 995 motion to dismiss. It attacked the quality of the performance of retained counsel at the original preliminary hearing and was brought in a timely manner before trial. It focused on counsel's stipulation to the necropsy report on the murder victim when the prosecution case rested heavily on scientific evidence. An *evidentiary* hearing—normally barred under a section 995 motion (see 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Proceedings Before Trial, § 2119(c), p. 2489) and inexplicably granted by this trial court—permitted the defense to present three experienced criminal attorneys, opining as to the

---

[4]Penal Code section 995 states, in pertinent part, "the . . . information shall be set aside by the court in which the defendant is arraigned, upon his or her motion, . . . [¶] . . . [¶] . . . [i]f it is an information: [¶] (A) That before the filing thereof the defendant had not been legally committed by a magistrate. [¶] (B) That the defendant had been committed without reasonable or probable cause. . . ."

merits and demerits of the original attorney's skills and tactics *during* the preliminary hearing. Thus, the error complained of *was* apparent in the record of the preliminary hearing; counsel's stipulation and the absence of defense scientific evidence contradicting the prosecution's case were plain on the face of the transcript.

■    The *Stanton* test, on the other hand, was crafted for situations arising from nonstatutory motions to dismiss. The difference between the two motions is not merely technical. A motion under Penal Code section 995 cannot resolve problems not apparent from the transcript of the preliminary hearing; generally, its purpose is to review the sufficiency of the pleading based on the record before the magistrate at the preliminary hearing. (*Currie* v. *Superior Court* (1991) 230 Cal.App.3d 83, 91 [281 Cal.Rptr. 250].) In contrast, the nonstatutory motion to dismiss is the appropriate vehicle for redress of an error not known or visible at the hearing itself. (*Stanton* v. *Superior Court, supra*, 193 Cal.App.3d at p. 269; *Currie* v. *Superior Court, supra*, 230 Cal.App.3d at p. 91; see 4 Witkin & Epstein, Cal. Criminal Law, *supra*, Proceedings Before Trial, §§ 2115-2118, pp. 2486-2488.) Cases involving motions under Penal Code section 995 are simply not applicable where the error is unascertainable from the preliminary hearing transcript or not known until after conviction, which is precisely the case here. (*Stanton, supra*, 193 Cal.App.3d at p. 272.)

■    As we stated in *Stanton*[5]—and which was repeated in *Currie*—we look to the materiality of the nondisclosed information and what effect it had on the determination of probable cause. (See *Stanton* v. *Superior Court, supra*, 193 Cal.App.3d at pp. 271-272; *Currie* v. *Superior Court, supra*, 230 Cal.App.3d at p. 93.) Olsen's refusal to identify Merrill was material on the issue of the identity of the perpetrator of *all* the charges against Merrill. The trial court, in the difficult position of trying to assess just *what* effect this

[5]In an alternative argument, the prosecution contends the *Stanton* case has been abrogated by Proposition 115 and case authority since its passage. It maintains Proposition 115 limits the purpose of a preliminary hearing to the singular issue of the existence of probable cause, and this limitation still meets the federal requirements of *Gerstein* v. *Pugh* (1975) 420 U.S. 103 [43 L.Ed.2d 54, 95 S.Ct. 854], the sole test of constitutionality. (*Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1077-1082 [2 Cal.Rptr.2d 160, 820 P.2d 262] [Prop. 115's procedure permitting a magistrate to bind over defendant on hearsay evidence upheld].) Extending this contention, the prosecution argues the sole issue for the trial court considering this nonstatutory motion—and this court in reviewing that court's decision—was whether there is a reasonable probability that the outcome would have been affected if the magistrate knew of the undisclosed evidence. But the trial court did exactly that here. It ruled that, even though it was very close, there was not—in its opinion—a reasonable probability the outcome would have been affected by the inclusion of Olsen's emphatic refusal to identify. Thus, the alternative argument fails to achieve any different result than the one reached applying *Stanton*, the more persuasive approach, in our opinion.

exculpatory information *might* have had on the magistrate, ruled its exculpatory value was outweighed by the circumstantial nature of this identification and by King's statements that Tom shot him and Tom was a Black man. The trial court's responsibility here was extremely difficult, having to reweigh the evidence at the preliminary hearing *after* having heard the full trial, yet being barred from considering any of the trial evidence, notably Brady's testimony.

It is appropriately the trial court's responsibility to accord weight and then to balance the relative importance of testimony. The record makes it very clear that the lower court scrutinized each piece of incriminating evidence *from the preliminary hearing* and then carefully weighed it against the exculpatory effect of Olsen's emphatic refusal to identify Merrill. That weighing process could best be done by the judicial officer who personally observed each witness. Here, the trial court neither overlooked exculpatory evidence nor considered incriminating evidence from any source but the preliminary hearing, as required by *Stanton.* We cannot say it abused its discretion.[6]

## DISPOSITION

## IV

The alternative writ is dissolved, and the petition is denied. The order staying further proceedings in the case is vacated.

Wallin, J., and Sonenshine, J., concurred.

A petition for a rehearing was denied September 28, 1994, and the opinion was modified to read as printed above.

---

[6]At oral argument, the representative of the district attorney's office agreed the *Stanton* test was properly applied by the trial court. The candor with which he presented his case to us was commendable. Had the initial prosecutor done the same, we would not be considering this case now.