[No. A134695. First Dist., Div. Three. Mar. 12, 2013.]

THE PEOPLE, Plaintiff and Appellant, v.
BALDOMERO GONZALEZ GUTIERREZ, Defendant and Respondent.

## Counsel

Mark Peterson, District Attorney, and Ryan Wagner, Deputy District Attorney, for Plaintiff and Appellant.

Stephanie Clarke, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**SIGGINS, J.**—The People appeal from an order dismissing charges brought against defendant Baldomero Gonzalez Gutierrez. The appeal asks us to depart from long-standing precedents—*Stanton v. Superior Court* (1987) 193 Cal.App.3d 265 [239 Cal.Rptr. 328] (*Stanton*), *Currie v. Superior Court* (1991) 230 Cal.App.3d 83 [281 Cal.Rptr. 250] (*Currie*), and *Merrill v. Superior Court* (1994) 27 Cal.App.4th 1586 [33 Cal.Rptr.2d 515] (*Merrill*)— that hold the prosecution's duty to disclose exculpatory evidence under *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] (*Brady*) applies to preliminary hearings. The principal contention is that over 20 years ago the passage of Proposition 115 "legislatively overruled" these precedents. However, neither Proposition 115 nor the cases and commentaries that have construed it support the People's position. *Izazaga v. Superior Court* (1991) 54 Cal.3d 356 [285 Cal.Rptr. 231, 815 P.2d 304] (*Izazaga*) held that Proposition 115 could not limit a defendant's due process rights under *Brady*, and *People v. Jenkins* (2000) 22 Cal.4th 900 [95 Cal.Rptr.2d 377, 997 P.2d 1044] (*Jenkins*) suggests that *Brady* applies in connection with preliminary hearings. The People's other arguments against *Brady*'s application at a preliminary hearing also lack merit. We therefore affirm.

## BACKGROUND

On May 30, 2002, a complaint was filed charging Gutierrez with two counts of lewd acts with a child under age 14 (Pen. Code, § 288, subd. (a)),[1] one against Jane Doe One (JD1) and the other against Jane Doe Two (JD2). An arrest warrant was issued on May 30, 2002, but Gutierrez was not arrested until May 27, 2011.

At the preliminary hearing in July 2011, a Concord police detective testified that he was dispatched to an elementary school on November 5, 2001, to investigate a report of child abuse. At the time, JD1 and JD2 were 11-year-old foster children who lived with Gutierrez, his wife and stepdaughter.

JD1 told the officer that she and Gutierrez were alone in the home the previous day when he asked her to come into his bedroom. He pulled her onto the bed and tried to kiss her on the lips but she turned away. He then put his hand on her vaginal area over her pants. She got up quickly and went outside the house. Gutierrez followed and warned her not to say anything or they would both get in trouble. That night JD1 asked JD2 if something similar had happened to her.

---

[1] Subsequent statutory references are to the Penal Code.

After speaking with JD1, the officer went to the home and spoke with JD2 who said that, about a year earlier, Gutierrez put his arm over her shoulder in a friendly way and then rubbed her buttocks over her clothes. She stepped away because she was uncomfortable and frightened. Gutierrez told her not to say anything, and she had been too embarrassed and afraid to report the incident.

The other witness at the hearing was a senior inspector with the district attorney's office who obtained a statement from Gutierrez's stepdaughter that JD1 and JD2 lived with her and Gutierrez in November 2001.

Gutierrez argued unsuccessfully that he should not be held to answer on the charges, stating, among other things, that investigators for the parties had not been able to locate JD1 or JD2.

After the preliminary hearing, the defense obtained from juvenile court police reports showing that JD1 had made accusations of molestations in 1996 and 1999 that were determined to have been unfounded.

In 1996, JD1 told a Pleasant Hill police sergeant that her mother's boyfriend had touched her vagina, put a screwdriver in her vagina, and kissed her buttocks. But a sexual assault examination revealed no trauma. When the sergeant discussed the examination with JD1's mother, she accused him of conspiring with the doctor to protect her boyfriend. JD1's six-year-old sister, who was in foster care, told her therapist that the boyfriend had also molested her. The sister made the report shortly after talking with her mother, and the sister's therapist and foster parent were shocked by the charges because the sister exhibited no signs of abuse. JD1's 10-year-old sister admitted falsely accusing the boyfriend of molesting her because "she was afraid her mother would beat her if she said [the boyfriend] did not touch her. She said her mother was always saying [the boyfriend] touched them." During the investigation, the mother kept calling the sergeant, yelling at him, and hanging up. The sergeant recommended that JD1 be taken into protective custody because of the mother's "irrational behavior," and closed the case against the boyfriend.

In 1999, JD1 reported to the Contra Costa Sheriff's Department that her mother's boyfriend put his finger in her vagina, and had her touch his penis, while she was in his car. A detective obtained the 1996 police report, and information from child protective services (CPS) that the mother "was mentally ill and projected her own molest onto the children. All of the CPS investigations were determined to be unfounded." Given this history, and proof of the boyfriend's whereabouts on the day of the alleged molestation, the detective and a deputy district attorney decided that no charges would be filed. JD1 later admitted that she had "lied because [the boyfriend] had done things to her in the past and he did not go to jail." The detective wrote: "I asked if she was referring to the incident that occurred in Pleasant Hill. She said she

was. I explained that I knew her older sister . . . had said that [the boyfriend] had done things to her because she thought she would get into trouble if she did not say . . . what [the mother] wanted her to say. I told her I thought that might be happening here. [JD1] did not respond, but nodded her head."

After receiving these reports, Gutierrez moved to dismiss the charges. He argued that the prosecution breached its duties under *Brady* by failing to disclose the 1996 and 1999 police reports before the preliminary hearing. He supported his motion with an informal discovery request he propounded prior to the preliminary hearing, that sought "any . . . potential impeachment information of any witness or alleged victim and the related police report." The prosecution filed no written opposition to the motion, but opposed it orally at the hearing. The court found a *"Brady* violation," and that it was reasonably probable the outcome of the preliminary hearing would have been different if the exculpatory evidence had been produced. The motion to dismiss was granted and this appeal ensued.

## DISCUSSION

I. *The* Brady *Obligation and* Stanton, Currie, *and* Merrill

■ "The prosecution has a duty under the Fourteenth Amendment's due process clause to disclose evidence to a criminal defendant [citation] [¶] . . . [that is] both favorable to the defendant and material on either guilt or punishment. [Citation.] [¶] Evidence is 'favorable' if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses. [Citation.] [¶] Evidence is 'material' '. . . if there is a reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different.' " (*In re Sassounian* (1995) 9 Cal.4th 535, 543–544 [37 Cal.Rptr.2d 446, 887 P.2d 527], fn. omitted; see *Brady, supra,* 373 U.S. at p. 87; *People v. Ruthford* (1975) 14 Cal.3d 399, 406 [121 Cal.Rptr. 261, 534 P.2d 1341] (*Ruthford*), disapproved on another point in *In re Sassounian, supra,* at p. 545, fn. 7.) " '[T]he suppression of substantial material evidence bearing on the credibility of a key prosecution witness is a denial of due process within the meaning of the Fourteenth Amendment.' " (*Stanton, supra,* 193 Cal.App.3d at p. 269, quoting *Ruthford, supra,* at p. 408.)

*Stanton* held that the prosecution's duty to disclose material evidence that is favorable to the defense (hereafter the *Brady* obligation) applies to preliminary hearings. (*Stanton, supra,* 193 Cal.App.3d at p. 267 [striking an element of the charged offense because of "the prosecution's failure to disclose evidence material to defense cross-examination of eyewitnesses at a preliminary hearing"]; *id.* at p. 269, quoting *Ruthford, supra,* 14 Cal.3d at p. 406.) Breach of the prosecution's *Brady* obligation in connection with a preliminary hearing can be raised by the defendant in a nonstatutory motion to

dismiss. (*Stanton*, at pp. 269–270 [distinguishing § 995 motions, which are confined solely to the record at the preliminary hearing].) " 'Although no clear California statutory authority provides for such a pretrial motion to dismiss, we have no doubt in light of the *constitutional* nature of the issue as to the trial court's authority to entertain such a claim.' " (*Stanton, supra*, at p. 271, italics added.) " 'It is settled that denial of a substantial right at the preliminary examination renders the ensuing commitment illegal and entitles a defendant to dismissal of the information on timely motion.' " (*Id.* at p. 270.)

*Stanton* stated: "Nondisclosure of evidence impeaching eyewitnesses on material issues is the deprivation of a substantial right" (*Stanton, supra*, 193 Cal.App.3d at p. 272), but *Currie* disagreed "[t]o the extent *Stanton* implie[d] that *any* cross-examination infringement . . . constitutes deprivation of a substantial right" (*Currie, supra*, 230 Cal.App.3d at p. 91, fn. 6). The motion to dismiss was properly denied in *Currie* where the "reasonable cause evidence was overwhelming," and "collateral" impeachment of a prosecution witness with the nondisclosed information would have provided "no evidence of adverse bias, interest, or motive." (*Id.* at p. 100.) The *Merrill* court likewise found it necessary to determine "what effect [the nondisclosed information] had on the determination of probable cause." (*Merrill, supra*, 27 Cal.App.4th at p. 1596.) The motion to dismiss was properly denied by the trial court in *Merrill* upon a finding "there was not . . . a reasonable probability the outcome would have been affected by the inclusion of [the exculpatory evidence]." (*Id.* at p. 1596, fn. 5.)

While *Currie* and *Merrill* confirmed that the withheld evidence must be material as well as exculpatory, those cases are consistent with *Stanton* in holding that the prosecution's *Brady* obligation extends to the preliminary hearing stage of criminal proceedings. (*Merrill, supra*, 27 Cal.App.4th at p. 1594 [failure to apprise the magistrate of material exculpatory evidence on the issue of guilt "violate[s] the mandates of *Ruthford* and *Brady*"]; see *Currie, supra*, 230 Cal.App.3d at p. 96, quoting *Ruthford, supra*, 14 Cal.3d at p. 406.) The People's appeal challenges that basic premise.[2]

---

[2] In the trial court, the prosecution argued only in passing that *Brady* was "inapplicable" because there was no infringement of the "right to a fair trial." The prosecution's main arguments against the motion to dismiss were that it did not possess the police reports, and that the reports would not have changed the outcome of the preliminary hearing. The People do not renew either of those contentions on appeal.

In their petition for rehearing, the People ask us to add facts to the opinion that bear on whether the prosecution possessed the police reports. We decline to do so. None of these facts were cited in the People's appellate brief, in which the People expressly made clear they were "not raising the issue of possession." The People chose instead to present this court with a pure issue of law regarding *Brady*'s application. In light of this tactical choice, they cannot belatedly advance arguments based on the facts of this particular case.

## II. *Proposition 115*

The People argue that the holding in "*Stanton* was abrogated by the passage of Proposition 115" in 1990. Proposition 115 added article I, section 30 to the California Constitution (1E West's Ann. Cal. Const. (2012 ed.) p. 71), which authorizes the use of hearsay evidence at preliminary hearings and, to promote "fair and speedy trials," provides that "discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the people through the initiative process." (Cal. Const., art. I, § 30, subds. (b), (c).) The measure enacted section 1054 et seq. (the Criminal Discovery Statutes) and amended section 866 pertaining to preliminary hearings. (Pipes & Gagen, Cal. Criminal Discovery (4th ed. 2008) § 2:13, p. 330 (Pipes).) Section 1054 states that "no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States." (§ 1054, subd. (e).) Among the materials and information the prosecution must disclose to the defense is "[a]ny exculpatory evidence." (§ 1054.1, subd. (e).) The required disclosures "shall be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred." (§ 1054.7.) "The court shall not dismiss a charge [because of a discovery violation] unless required to do so by the Constitution of the United States." (§ 1054.5, subd. (c).) Section 866 as amended by the measure provides that the preliminary hearing "shall not be used for purposes of discovery." (§ 866, subd. (b).)

■ Contrary to the People's argument, nothing in Proposition 115 could supersede the prosecution's *Brady* obligation under the United States Constitution. This was made clear in *Izazaga, supra,* 54 Cal.3d 356, where the court rejected an argument that "the new discovery chapter violates the due process clause by failing to require the prosecutor to disclose all exculpatory evidence as mandated by the high court in *Brady* . . . ." (*Id.* at p. 377.) The court concluded that the Criminal Discovery Statutes could not violate due process because the new statutes do not affect the defendant's constitutional rights under *Brady,* explaining: "The prosecutor's duties of disclosure under the due process clause are *wholly independent* of any statutory scheme of reciprocal discovery. The due process requirements are self-executing and need no statutory support to be effective. . . . The prosecutor is obligated to disclose such evidence *voluntarily* . . . . [¶] No statute can limit the foregoing due process rights of criminal defendants, and the new discovery chapter does not attempt to do so. On the contrary, the new discovery chapter contemplates disclosure *outside* the statutory scheme pursuant to constitutional requirements as enunciated in *Brady* . . . ." (*Id.* at p. 378, quoting § 1054, subd. (e)'s provision for discovery as required by the federal Const.].)

*Izazaga* is dispositive of the People's arguments that Proposition 115 altered the prosecution's *Brady* obligation. *Izazaga* addressed the Criminal Discovery Statutes, but its reasoning applies equally to the measure's amendment of the California Constitution and section 866.[3] The People contend that Proposition 115 "legislatively overruled" *Stanton,* and that *Merrill,* which was decided after Proposition 115 was effective, "failed to grasp that Proposition 115 abrogated the earlier right to receive impeachment evidence before the preliminary hearing." However, *Izazaga* confirms that Proposition 115 could not alter the prosecution's *Brady* obligation, and we agree with the *Izazaga* court that, properly interpreted, the measure "does not attempt to do so." (*Izazaga, supra,* 54 Cal.3d at p. 378.)

■ The People argue that under section 1054.7 the parties have no duty to provide discovery until 30 days before trial, and that requiring *Brady* disclosures for a preliminary hearing violates our state constitutional provision for reciprocal discovery (Cal. Const., art. I, § 30, subd. (c)) because it requires the prosecution to disclose evidence at a stage when the defense has no similar obligation. However, as *Izazaga* correctly observes, the prosecution's *Brady* obligation exists entirely apart from state law provisions for reciprocal discovery, and would have effect even if there were no state discovery scheme. (*Izazaga, supra,* 54 Cal.3d at pp. 377–378.) The concept of reciprocal discovery is inapposite because *Brady* disclosures are the prosecution's unilateral, not reciprocal, responsibility. (See *Magallan v. Superior Court* (2011) 192 Cal.App.4th 1444, 1460 [121 Cal.Rptr.3d 841] (*Magallan*) [§ 1054.7's provision for discovery "at least" 30 days before trial does not preclude a defendant from making a discovery motion in connection with a preliminary hearing].)

■ The People submit that *Brady* cannot be enforced at a preliminary hearing because the Criminal Discovery Statutes strip magistrates of the power to make discovery orders. (See § 1054.5, subds. (a) ["[n]o order requiring discovery shall be made in criminal cases except as provided in this chapter"], (b) [providing for "court enforcement" of discovery obligations]; Pipes, *supra,* §§ 2:23–2:25, pp. 344–351.) But the prosecution's duty imposed by *Brady* is "self-executing." (*Izazaga, supra,* 54 Cal.3d at p. 378.) "A defense request or motion for 'all exculpatory material,' or similar language is unnecessary. The prosecutor's duty to provide such evidence

---

[3] *Izazaga* also precludes the People's attempted reliance on the Federal Magistrates Act (28 U.S.C. § 631 et seq.), authority related to that act, or cases applying the laws of other states (e.g., *People v. Coleman* (1999) 307 Ill.App.3d 930 [241 Ill.Dec. 220, 718 N.E.2d 1074, 1077] [applying Ill. Supreme Court Rule 411]), to define the scope of the prosecution's *Brady* obligation.

exists even without a court order, and the order technically adds nothing to the prosecutor's duty." (Pipes, *supra*, § 1:80, p. 260.) Moreover, the Criminal Discovery Statutes do not preclude magistrates from enforcing discovery obligations, such as *Brady* disclosures, under "other express statutory provisions, or as mandated by the Constitution of the United States." (§ 1054, subd. (e); see *Magallan, supra*, 192 Cal.App.4th at pp. 1444, 1450, 1457, quoting § 1054, subd. (e) [a magistrate can order the prosecution to provide discovery on a motion to suppress given the defendant's statutory right to litigate the motion at the preliminary hearing]; Pipes, *supra*, § 2:25, pp. 349–351 [a magistrate's authority over discovery can constitutionally be limited, but *Brady* disclosures are constitutionally compelled].)

■ The People maintain that the trial court could not dismiss the charges in this case because section 1054.5, subdivision (c) states that a court cannot dismiss a charge for a discovery violation "unless required to do so by the Constitution of the United States." But this argument assumes that we would conclude, contrary to *Stanton, Currie*, and *Merrill*, that the federal Constitution does not require *Brady* disclosures in connection with preliminary hearings. The People point out that the Criminal Discovery Statutes make no provision for dismissal of charges against defendants who are prosecuted with a preliminary hearing like the provision pertaining to those who are indicted. As to indicted defendants, section 939.71, subdivision (a) states: "If the prosecutor is aware of exculpatory evidence, the prosecutor shall inform the grand jury of its nature and existence. . . . [A] failure to comply with the provisions of this section [may] be grounds for dismissal . . . ." But this statute is irrelevant. Section 1054.5, subdivision (c) preserves judicial power to dismiss charges for a *Brady* violation. (See *People v. Ashraf* (2007) 151 Cal.App.4th 1205, 1214 [60 Cal.Rptr.3d 624] [since there was no *Brady* violation, the federal Const. did not require dismissal of the case for the People's failure to disclose the evidence at issue].)

■ Section 866 as amended by Proposition 115 provides that defense testimony may be excluded at a preliminary hearing unless it is "reasonably likely to establish an affirmative defense, negate an element of a crime charged, or impeach the testimony of a prosecution witness or the statement of a declarant testified to by a prosecution witness." (§ 866, subd. (a).) Section 866, subdivision (b) states: "It is the purpose of a preliminary examination to establish whether there exists probable cause to believe that the defendant has committed a felony. The examination shall not be used for purposes of discovery."

The People cite treatises to support their argument that section 866 negates any *Brady* obligation in connection with a preliminary hearing. "The amendment to Penal Code section 866, which expressly limits the defendant's ability to use a preliminary examination as a discovery device, appears to indicate an intent on the part of the electorate that discovery is not a required part of pretrial proceedings prior to the time a case reaches the jurisdiction of the trial court." (Pipes, *supra*, § 2:13, p. 330; see Simons, Cal. Preliminary Examinations and 995 Benchbook: Statutes and Notes (2012) § 2.1.7, p. 2-8 (Simons) ["it appears that Proposition 115 has eliminated any general requirement that discovery be provided to the defense before the preliminary examination"].) Neither of these commentaries supports the People's position. "The defendant at the hearing still has the right to cross-examine prosecution witnesses . . . as well as to call witnesses who can establish an affirmative defense, negate an element of a crime charged, or impeach the testimony of a prosecution witness or the statement of a declarant testified to by a prosecution witness . . . . To effectuate these rights, it seems necessary to provide defense counsel with . . . exculpatory evidence . . . pre-hearing." (Simons, *supra*, § 2.1.7, p. 2-10, citations omitted; see Pipes, *supra*, 2:13, p. 331, discussing *Jenkins, supra*, 22 Cal.4th 900 ["except for exculpatory evidence, a defendant does not have a right prior to the preliminary examination to discovery . . ."].)

In *Jenkins*, the defendant argued that the prosecution should have been sanctioned for failing to disclose inculpatory evidence—statements by a man named Carroll that the defendant had admitted the crime—until two months after the preliminary hearing. The court found no prejudice because the defendant had one and a half years after learning of it to challenge the evidence at trial. "At trial, defendant was able to confront and cross-examine Carroll, having had ample opportunity to investigate the basis for the witness's testimony and any affirmative defense suggested by it. The delay in disclosure did not implicate defendant's due process right to be informed of material evidence favorable to the accused . . . ." (*Jenkins, supra*, 22 Cal.4th at p. 951, citing *Brady*.) The court's reference to the prosecution's *Brady* obligation in *Jenkins* was unnecessary if, as the People posit, the disclosure obligation is inapplicable to preliminary hearings.

Thus, no authority supports the People's reading of Proposition 115. The People attempt to rely on *Jones v. Superior Court* (2004) 115 Cal.App.4th 48 [8 Cal.Rptr.3d 687], but that reliance is misplaced.

The issue in *Jones* was whether the defense was required to disclose evidence to the prosecution for a probation revocation hearing, and the court

held that the Criminal Discovery Statutes imposed no such duty. The court observed that "[m]ost of the discovery provisions set forth in the Criminal Discovery Statute[s] expressly apply to discovery in a trial setting." (*Jones, supra*, 115 Cal.App.4th at p. 57.) All of the discovery the defense is required to produce under section 1054.3 relates to evidence to be produced at trial, and half of the subdivisions of section 1054.1, which specifies discovery owed by the prosecution, refer to trial-related evidence.[4] The *Jones* court also noted that section 1054.7 "generally mandates" that discovery be provided "before 'trial,' " and "some of the express purposes of the Criminal Discovery Statute[s] . . . appear to limit the application of the statute to a pretrial setting." (*Jones, supra*, at pp. 58–59, fn. omitted; see § 1054, subds. (a), (c) [those statutes are intended, among other things, to "promote the ascertainment of truth in trials by requiring timely pretrial discovery," and to "save court time in trial and avoid the necessity for frequent interruptions and postponements"].) Since "a probation revocation proceeding is not a criminal trial within the meaning of section 1054.3," the probationer had no obligation under the Criminal Discovery Statutes to provide discovery to the prosecution at that hearing. (*Jones*, at p. 50.)

*Jones* is inapposite. It concerned the discovery obligations of the defense, not the prosecution, and it involved a posttrial rather than pretrial hearing (see *Magallan, supra*, 192 Cal.App.4th at pp. 1458–1459 [*Jones*'s reasoning is confined to postconviction proceedings]). The *Jones* court's only reference to the prosecution's *Brady* obligation was to note that " '*Brady* exculpatory evidence is the only substantive discovery mandated by the United States Constitution.' " (*Jones, supra*, 115 Cal.App.4th at p. 62.) Moreover, *Jones* undermines the People's position insofar as it focuses on the trial-related

---

[4] Section 1054.3 provides: "(a) The defendant and his or her attorney shall disclose to the prosecuting attorney: [¶] (1) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses *at trial*, together with any relevant written or recorded statements of *those persons*, or reports of the statements of *those persons*, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence *at the trial*. [¶] (2) Any real evidence which the defendant intends to offer in evidence *at the trial*." (Italics added.)

Section 1054.1 provides: "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] (a) The names and addresses of persons the prosecutor intends to call as witnesses *at trial*. [¶] (b) Statements of all defendants. [¶] (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged. [¶] (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome *of the trial*. [¶] (e) Any exculpatory evidence. [¶] (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call *at the trial*, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence *at the trial*." (Italics added.)

nature of most of the discovery described in the Criminal Discovery Statutes. The duty to disclose exculpatory evidence under section 1054.1, subdivision (e) is not circumscribed by any reference to trial, suggesting that the prosecution's *Brady* obligation is not limited in connection with preliminary hearings.

Accordingly, we reject the People's claim that the holdings in *Stanton, Currie,* and *Merrill* were supplanted by Proposition 115.

III.  *Authority Other Than Proposition 115*

The People also support their argument by pointing to language in California and United States Supreme Court cases stating that the *Brady* obligation exists to ensure that the defendant receives a "fair trial." (E.g., *In re Brown* (1998) 17 Cal.4th 873, 884 [72 Cal.Rptr.2d 698, 952 P.2d 715]; *United States v. Ruiz* (2002) 536 U.S. 622, 628 [153 L.Ed.2d 586, 122 S.Ct. 2450].) *Izazaga* also describes the *Brady* obligation in terms of the right to a "fair trial." (*Izazaga, supra,* 54 Cal.3d at p. 378.) But the People identify no case discussing whether defendants have a right to exculpatory evidence at preliminary hearings. Thus, the cited cases do not demonstrate that the *Brady* obligation does not extend to those hearings.

· The People also cite cases in other states holding that *Brady* disclosures are not required for preliminary hearings. (*State v. Benson* (1983) 1983 OKCR 43 [661 P.2d 908, 909]; *State ex rel. Lynch v. County Court, Branch III* (1978) 82 Wis.2d 454 [262 N.W.2d 773, 778–779], citing *U.S. v. King* (S.D.N.Y. 1970) 49 F.R.D. 51, 53.) However, we will not follow them, and instead decline to look beyond the dictum in *Jenkins* that supports *Stanton*'s, *Currie*'s, and *Merrill*'s holdings to the contrary.[5] (*California Medical Assn. v. Brown* (2011) 193 Cal.App.4th 1449, 1458 [123 Cal.Rptr.3d 647] ["Supreme Court dicta should generally be viewed as persuasive authority."].)

The People argue that *Brady* disclosures are not required for preliminary hearings because, under *United States v. Williams* (1992) 504 U.S. 36, 49–52 [118 L.Ed.2d 352, 112 S.Ct. 1735], prosecutors have no federal constitutional obligation to furnish exculpatory evidence to grand juries. (See *Berardi v. Superior Court* (2007) 149 Cal.App.4th 476, 492, fn. 9 [57 Cal.Rptr.3d 170] [interpreting *Williams*].) However, the constitutional rights of individuals

---

[5] Because we follow these cases in concluding that defendants have a due process right under the United States Constitution to *Brady* disclosures in connection with preliminary hearings, we need not address whether defendants also have that due process right under the California Constitution. (Cal. Const., art. I, § 15.)

being investigated by grand juries are not the same as those of defendants at preliminary hearings. (*Williams, supra,* at p. 49 ["certain constitutional protections afforded defendants in criminal proceedings have no application before [a grand jury]"; e.g., *People v. Brown* (1999) 75 Cal.App.4th 916, 931–932 [89 Cal.Rptr.2d 589] [no right to counsel during grand jury proceedings]; *Coleman v. Alabama* (1970) 399 U.S. 1, 9–10 [26 L.Ed.2d 387, 90 S.Ct. 1999] [right to counsel at a preliminary hearing].) Moreover, *Williams* reasoned that "requiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body." (*Williams, supra,* at p. 51.) This articulation of the court's reasoning suggests that a right to disclosure of exculpatory evidence attaches in a criminal adjudication such as a preliminary hearing. (Compare *In re Geer* (1980) 108 Cal.App.3d 1002, 1008 [166 Cal.Rptr. 912] [preliminary hearing determinations are adjudicatory] with *Brown, supra,* at p. 931 [grand jury proceedings are investigatory, not adjudicatory].) Thus, to the extent *Williams* has any application here, it hurts rather than helps the People's case.

The People assert that "[s]ince the federal constitution fails to endow criminal defendants with any rights whatsoever to a preliminary hearing, it hardly requires *Brady* disclosure before such a hearing." But just because a defendant has no federal constitutional right to a preliminary hearing (*Bowens v. Superior Court* (1991) 1 Cal.4th 36, 41 [2 Cal.Rptr.2d 376, 820 P.2d 600]) does not mean that a defendant who undergoes one has no such rights (e.g., *Coleman v. Alabama, supra,* 399 U.S. at pp. 9–10 [right to counsel]).

■ Finally, the People argue that "no substantial right entitles an accused to receive *Brady* disclosure before a preliminary hearing." However, since evidence is not material for *Brady* purposes unless it is reasonably probable that the evidence would have changed the outcome (*In re Sassounian, supra,* 9 Cal.4th at p. 544), *Brady* violations are, by definition, prejudicial (*id.* at p. 545, fn. 7). Breach of the prosecution's *Brady* obligation must therefore be deemed to violate a substantial right. (Cf. *Jennings v. Superior Court* (1967) 66 Cal.2d 867, 874–875 [59 Cal.Rptr. 440, 428 P.2d 304] [citing violations of substantial rights, such as allowing an unauthorized person to remain in the courtroom during the preliminary hearing, where the errors were not necessarily prejudicial].)

## DISPOSITION

The order of dismissal is affirmed.

McGuiness, P. J., and Pollak, J., concurred.

A petition for a rehearing was denied April 9, 2013, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 19, 2013, S210101. Baxter, J., was of the opinion that the petition should be granted.