Filed 12/16/14  P. v. De Los Santos CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEVEN DE LOS SANTOS,<br><br>    Defendant and Appellant. | 2d Crim. No. B247036<br>(Super. Ct. No. GA079201)<br>(Los Angeles County)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

        THE COURT on its own motion, orders that the opinion filed herein on December 10, 2014, be modified as follows:

        1.  On page 1, the "Super. Ct. No. GA 0795201" is modified to read Super. Ct. No. GA079201.

        There is no change in the judgment.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEVEN DE LOS SANTOS,<br><br>    Defendant and Appellant. | 2d Crim. No. B247036<br>(Super. Ct. No. GA 0795201)<br>(Los Angeles County) |

Steven De Los Santos was charged in an information with mayhem (Pen. Code § 203 – count 1); battery with serious bodily injury (*id.* § 243, subd. (d) – count 2); possession of cocaine for sale (Health & Saf. Code § 11351 – count 3); possession of more than one kilogram of methamphetamine for sale (*id.* §§ 11370.4, subd. (a)(1), 11378 – count 4); and possession of a controlled substance while armed with a handgun (*id.* § 11370.1, subd. (a) – count 5).  The mayhem charge was dismissed before trial and the battery charge was severed from the other counts for trial separately.  When the jury found De Los Santos guilty verdict on count 2, he entered a plea of no contest to counts 3 through 5.  De Los Santos was sentenced to seven years in state prison and was ordered to pay certain fines and assessments and to make restitution.

On appeal De Los Santos contends his conviction must be reversed and the charge dismissed because of *Brady* violations and "outrageous" conduct by a police detective.  (*Brady v. Maryland* (1963) 373 U.S. 83, 87 (*Brady*).)  While the court's minutes and judgment must be corrected to reflect that De Los Santos was convicted by a jury and not based upon a plea of guilty or no contest, in all other respects we affirm.

FACTS AND PROCEDURAL BACKGROUND

*The People's Case*

Phillip Amaro worked as a "D.J." at Maikobe, a restaurant/bar in Pasadena.  On the night he was attacked, Amaro met Ian Chandler, a coworker, and his girlfriend Vickie Chevalier at Maikobe.  After having drinks there, they went to Wokcano, a nearby restaurant/bar where Alexander Andre worked as a D.J. and Edward Damas and Eric Ruiz were security guards.  De Los Santos, a former Wokcano security guard, was a patron.

When Amaro and his companions arrived at Wokcano, Andre approached Amaro and challenged him to a "D.J. battle" – a competition between the D.J.s to show off their skills.  When Amaro took his turn, he shouted insults at Andre which led to an "exchange of words" and a fistfight.

Chandler jumped into the fray and restrained Andre.  De Los Santos grabbed Amaro from behind, placed him in a headlock/chokehold and lifted him off the ground.  As Amaro struggled to free himself, De Los Santos struck him hard on the right side of his face and Amaro felt blood spilling into his mouth.  Amaro "saw stars" and then passed out.

Chevalier was close to the fight and saw De Los Santos hit Amaro very hard three times on his face.  She said she saw Damas and other persons also punch him.  De Los Santos, Damas and Ruiz then carried Amaro out of the bar and left him face down, seriously injured and unconscious in an alley behind the bar.

*The Defense Case*

Ryan Telles, a bartender at Wokcano, said Amaro was intoxicated. He confirmed Andre's "D.J. challenge," Amaro's taunting insults and the fight that followed. Telles recalled that the security guards intervened and said De Los Santos held Amaro in a chokehold and Damas restrained his hands. Telles said he did not see anyone strike Amaro before he was taken out of the bar.

Damas elected to testify at his trial. He said De Los Santos put Amaro in a headlock and lifted him off the ground. Amaro struggled against De Los Santos' chokehold and wildly swung his fists and kicked his feet. Damas testified that he grabbed Amaro's wrists and the struggling stopped. Damas said he and Ruiz and De Los Santos escorted Amaro to the back door of the bar and De Los Santos and Ruiz took him into the alley and left him there. Damas denied striking Amaro and said he did not see De Los Santos or anyone else attack Amaro before he was taken out of the bar.

*Disclosure of Eight Recorded Interviews by Okamoto*

Kevin Okamoto was the detective assigned to investigate the case. Six days into the presentation of the prosecution's case, Okamoto disclosed that in 2010 he recorded the statements of several persons about the incident at Wokcano. One of the persons was Megan Cannon, an eyewitness to the fight and its aftermath.

De Los Santos and his codefendant Damas moved to dismiss the battery charges, asserting Okomoto's failure to disclose the interviews and turn over the tapes was "egregious" *Brady* error. The prosecutor agreed the recorded statements should have been disclosed and produced but contended Okamoto's failure to do so was not a *Brady* violation that prejudiced the defense or warranted dismissal.

The court refused to rule on the defendants' motion to dismiss the proceedings until all the evidence was received and the question of the prejudice, if any, resulting from the late disclosure could be fully developed. The court said, "I'll only rule on a motion for a mistrial. Dismissal is not the only remedy for any kind of discovery violation. The court has numerous other remedies." The court said the

3

question was "whether the defense can present a defense without . . . this information. So far, the defense has [presented] a very effective defense. I want to get this case to a jury or I will grant a mistrial. . . . So, counsel, let me know what your choice is, if there is a choice."

The trial court repeatedly agreed to grant a motion for a mistrial if counsel for De Los Santos and Damas would simply make the motion. De Los Santos and Damas repeatedly rejected the remedy suggested by the court. The court said, "Make a motion for a mistrial, and I will happily grant it"; "I'm willing to [be fair to the defendants]. If you want a mistrial to be granted, I will do that. You will then have enough time to prepare your case." "If you feel you cannot continue on with late information, you may request a mistrial, and I will grant it." Defense counsel made the strategic decision to refuse the remedy of a mistrial.

The trial court permitted Okamoto to testify about his investigation and to relate what was said in Cannon's interviews. Okamoto said Cannon told him she was at the bar, close to the commotion when it started. She said she was acquainted with De Los Santos and his family and saw him put Amaro in a headlock to control him and get him out of the back door of the bar with Damas' help. Okamoto testified that Cannon told him she did not see anyone strike Amaro and said De Los Santos and Damas came back into the bar immediately after taking Amaro outside.

Okamoto said he did not disclose the interviews and the recordings because he thought they were not "relevant." Cannon's interview was not disclosed because she "didn't see a lot" and because she was "friends with [De Los Santos'] family" and for that reason was "somewhat deceptive."

Okamoto was vigorously cross-examined by counsel for De Los Santos and Damas. The trial court instructed the jury that it could consider Okamoto's failure to timely disclose Cannon's statements and its effect on the ability of De Los Santos and Damas' ability to present a defense or receive a fair trial. The final arguments of counsel included withering criticism of Okamoto's investigative techniques and his decision not to disclose the interviews.

4

De Los Santos' motion for a new trial was denied based upon all the evidence and the court's conclusion that it could not be said the outcome would probably have been different if Okamoto's interviews of Cannon had been timely provided.

De Los Santos contends that it was an abuse of discretion for the trial court to deny his motion to dismiss the proceedings and to deny his motion for a new trial because Okamoto's deliberate withholding of the recorded statement of Cannon, an eyewitness, was a *Brady* violation that demanded one of these remedies. We disagree.

## DISCUSSION

### I.

### *Claimed Brady Violation*

*Brady* imposes on the prosecution an affirmative duty to disclose material, exculpatory information to the defense, "irrespective of the good faith or bad faith of the prosecution." (*Brady*, *supra*, 373 U.S. at p. 87.) Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (*U.S. v. Bagley* (1985) 473 U.S. 667, 682.) A reasonable probability is one sufficient to undermine confidence in the outcome of the trial. (*Id.*, at p. 674.)

The remedy for a *Brady* violation is a mistrial, which is precisely what the trial court offered De Los Santos and Damas. (See Levenson, Cal. Criminal Procedure (Rutter 2013) ¶ 16:6, p. 126-9; *Merrill v. Superior Court* (1994) 27 Cal.App.4th 1586, 1594.) As a matter of trial tactics, the defendants' counsel rejected the remedy and therefore waived the claimed error. They believed, perhaps reasonably, that the defendants' strongest defense would be had by vigorously cross-examining Okamoto, securing a jury instruction that calls attention to the untimely disclosure of evidence by the People (CALCRIM No. 306) and by aggressively arguing the impact of Okamoto's bad choices on the defendants' right to a fair trial. Having made that election, De Los Santos is bound by it. (See, e.g., *People v.*

5

*Morrison* (2004) 34 Cal.4th 698, 714-715 [failure to "request appropriate sanctions, or seek a continuance on the matter is fatal to his contentions on appeal"].)

"Although the right to request a mistrial or proceed to a conclusion with the same jury is a fundamental right, the law does not require that it be personally waived by an accused, nor does the law require that an accused be admonished concerning the nature of the right. [Citations.] Accordingly, trial counsel had the right to make that decision as a matter of trial tactics [citation] even over appellant's objection. [Citation.]" (*People v. Brandon* (1995) 40 Cal.App.4th 1172, 1175.)

In any event, De Los Santos' claims lack merit. The court's offer to grant a mistrial if either De Los Santos or Damas made the motion means the witness and what she said were disclosed in time for its effective use at trial. (*People v. Wright* (1985) 39 Cal.3d 576, 589 [*Brady* is not violated if disclosed in time for presentation to the jury].) Counsel for the defendants knew Cannon was a witness well before the trial commenced. De Los Santos and Damas listed her as a potential witness. Damas' counsel interviewed Cannon before trial and shared his notes about the interview with the prosecutor and counsel for De Los Santos. When De Los Santos' counsel spoke to Cannon during the trial, she considered calling Cannon to testify but concluded she would not be of help to De Los Santos. "'[W]hen information is fully available to a defendant at the time of trial and his . . . only reason for not obtaining and presenting the evidence to the Court is his . . . lack of reasonable diligence, the defendant has no *Brady* claim.' [Citation.]" (See also *U.S. v. Stuart* (1980) (8th Cir. 1998) 150 F.3d 935, 937 ["Evidence is not suppressed if the defendant has access to the evidence prior to trial by the exercise of reasonable diligence"].)

Cannon's statement to Okamoto that she did not see anyone hit Amaro while he was inside the bar was presented to the jury. Based upon her conversations with counsel for the defendants, it does not appear she had anything else to offer. The trial court properly tempered Okamoto's failure to provide the evidence earlier by allowing the "sum and substance" of Cannon's recollections to be presented to the jury through the hearsay testimony of Okamoto. The manner of presenting Cannon's

6

"testimony" advantaged the defense because she could not be cross-examined or impeached about the substance of her recollections or her "friend of the family" connection to De Los Santos.

We agree with the trial court that the defendants were not prejudiced by the omission. Moreover, even assuming there was a *Brady* violation, the remedy is a mistrial which the court offered and the defendants refused.

## II.

### *Claimed Outrageous Government Conduct*

De Los Santos contends the trial court should have dismissed the case because Okamoto's conduct during his investigation was outrageous. Nine instances of misconduct were asserted. We conclude these claims have been forfeited except as to Okamoto's late production of evidence because they were not litigated below. The claimed outrageous conduct was not asserted as a basis for either the motion to dismiss that was made during the trial or the motion for a new trial after De Los Santos was convicted by the jury.

The defendants' motion to dismiss was made on March 9, 2012, when Okamoto for the first time disclosed the February 2010 interviews and provided the defendants' counsel with a copy of the recorded statements. This motion to dismiss was based exclusively on the claimed *Brady* violation. Neither De Los Santos nor Damas presented evidence of the alleged misconduct and the trial court was never asked to make any findings. Issues not raised and decided in the trial court are forfeited on appeal. (*People v. Maury* (2003) 30 Cal.4th 342, 418, fn. 17.) Similarly, De Los Santos' motion for a new trial was based entirely on Okomoto's failure to disclose the recorded statement of Megan Cannon.

## III.

### *The Abstract of Judgment*

The abstract of judgment shows De Los Santos' conviction was based upon his plea of guilty or no contest. The People concede the abstract should be amended to show he was convicted by a jury.

7

DISPOSITION

The superior court is directed to amend the abstract of judgment accordingly and forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed in all other respects.

<u>NOT TO BE PUBLISHED.</u>

BURKE, J.[*]

We concur:

YEGAN, Acting P. J.

PERREN, J.

---

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

8

Teri Schwartz, Judge

Superior Court County of Los Angeles
_____

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, William H. Shin, Deputy Attorney General, for Plaintiff and Respondent.