[No. G005121. Fourth Dist., Div. Three. June 30, 1987.]

JOSEPHINE STANTON, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Ronald Y. Butler, Public Defender, Frank Scanlon, Assistant Public Defender, Thomas Havlena and Leonard Gumlia, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Cecil Hicks, District Attorney, Maurice L. Evans, Assistant District Attorney, Brent F. Romney and Craig McKinnon, Deputy District Attorneys, for Real Party in Interest.

OPINION

WALLIN, J.—In this case we hold the prosecution's failure to disclose evidence material to defense cross-examination of eyewitnesses at a preliminary hearing entitles the defendant to have an element of the charged offense, gross negligence, stricken from the information, leaving the remaining charge as a misdemeanor.

Petitioner Josephine Stanton was initially charged with misdemeanor vehicular manslaughter with gross negligence. (Pen. Code, § 192, subd. (c)(1).)[1] Approximately one month later the district attorney's office received an investigative report from the civil attorney for the decedent's family containing summaries of interviews with three eyewitnesses. Shortly thereafter, a felony complaint was filed charging Stanton with vehicular manslaughter with gross negligence (§ 192, subd. (c)(1)) and with vehicular manslaughter with gross negligence while under the influence of drugs or alcohol (§ 192, subd. (c)(3)).[2] The misdemeanor complaint was dismissed.[3] Stanton was held to answer only for the violation of section 192, subdivision (c) (1) following a preliminary hearing. Immediately before trial, the defense was provided a copy of the investigative report for the first time. Stanton brought a section 995 motion to set aside the information and a nonstatutory motion to dismiss. Both were denied. In this proceeding, Stanton seeks a writ of mandate and/or prohibition to compel the superior court to vacate its denial of the motion to dismiss.

---

[1] All future statutory references are to the Penal Code.

[2] Section 192, subdivision (c) (3) was amended in 1986 and is now embodied in the new section 191.5. (Stats. 1986, ch.1106, § 2).

[3] The record reflects an earlier judge entered a nunc pro tunc order changing the dismissal to a withdrawal by the district attorney's office. However, the magistrate in this case found no authority for the procedure invoked and decided the misdemeanor complaint, in fact, had been dismissed; the propriety of that determination is not before us.

## I

Early one afternoon at an intersection dampened by intermittent rain, the decedent was proceeding with a left hand turn on a green arrow when Stanton, driving into the intersection against a red light, struck the passenger side of the decedent's car. Three eyewitnesses testified at the preliminary hearing.

Susan Kerwin was in line to make the same left turn attempted by the decedent. At the time of the crash, she had just passed the limit line and had a clear view of the scene. She saw Stanton's car approaching the intersection at approximately 55 miles per hour. She testified Stanton did not attempt to slow down; there were no sounds of tires screeching or signs of skidding.

Peter Ferris stopped in his vehicle at the red light, looked through his rear view mirror and saw Stanton approaching the intersection. As Stanton drove alongside and in front of him, he turned his head to watch her. He testified her speed was about 45 miles per hour; she made no attempt to slow down, stop, or accelerate before colliding with the decedent's car.

Martha Fitzwater had been stopped at the intersection for about seven seconds when Stanton's car passed her at about 45 to 55 miles per hour. She did not see any brake lights from the rear of Stanton's car nor did the car slow down before the collision.

Defense counsel cross-examined each of these witnesses at the preliminary hearing. However, despite the "open file" policy at the district attorney's office and repeated assurances she had been given everything in the file, Stanton's attorney had not been provided with a copy of the private investigative report. The report, forwarded to the district attorney's office prior to the filing of the felony complaint, included statements from Kerwin, Ferris and Fitzwater taken shortly after the accident and casting doubt on the credibility of their testimony at the preliminary hearing.

Although Kerwin testified at the preliminary hearing she did not hear any screeching or see any signs of skidding, she told the private investigator shortly after the accident that she had, in fact, heard screeching brakes or tires and she believed Stanton had made an attempt to stop. Similarly, Ferris told the investigator he was not in the correct position to see the rear of the car to determine whether Stanton's brake lights had been on; at the hearing, Ferris testified he had not seen brake lights, skidding, or the car slowing down. Fitzwater told the investigator she was too emotionally traumatized by the collision to remember or discuss what she had seen. At the preliminary hearing she expressed no such hesitation.

## II

█ Both sides agree on the fundamental "duty on the part of the prosecution, even in the absence of a request therefor, to disclose all substantial material evidence *favorable to an accused,* whether such evidence relates directly to the question of guilt, to matters relevant to punishment, or to the credibility of a material witness." (*People* v. *Ruthford* (1975) 14 Cal.3d 399, 406 [121 Cal.Rptr. 261, 534 P.2d 1341].) "[T]he suppression of substantial material evidence bearing on the credibility of a key prosecution witness is a denial of due process within the meaning of the Fourteenth Amendment." (*Id.,* at p. 408.) Procedurally, Stanton's objection to the prosecution's failure to disclose was raised in two distinct pretrial dismissal motions. The section 995 motion is addressed first.

█ The court found the preliminary hearing transcript contained no evidence of the prosecution's dereliction. It ruled an evidentiary hearing was an improper adjunct to section 995 review and the section 995 motion was therefore an incorrect vehicle to challenge the alleged constitutional deprivation. The court was correct. "The purpose of a motion to set aside the accusatory pleading under Penal Code section 995 is to review the sufficiency of the indictment or information on the basis of the record made before the grand jury in the one case or the magistrate at the preliminary hearing in the other. A section 995 motion does not contemplate the introduction of evidence at the hearing on the motion." (*People* v. *Crudgington* (1979) 88 Cal.App.3d 295, 299 [151 Cal.Rptr. 737].)

Stanton contends *People* v. *Mackey* (1985) 176 Cal.App.3d 177 [221 Cal.Rptr. 405] is factually indistinguishable and dispositive. In *Mackey,* the prosecution failed to disclose a statement taken from the key witness in spite of a discovery order compelling disclosure of all witnesses' statements. Neither did the prosecution reveal that witness had been hypnotized. The Court of Appeal found the prosecution's failure to disclose constituted a denial of a substantial right because the defendant was unable to effectively cross-examine the witness or to present evidence of the hypnosis at the preliminary hearing. (*Id.,* at p. 187.)

The substantive portion of the court's analysis is compelling; however, its definition of "the record" is somewhat bizarre. The court wrote, "The People cite *People* v. *Crudgington* (1979) 88 Cal.App.3d 295, 299 [151 Cal.Rptr. 737] and *People* v. *Manson* (1976) 61 Cal.App.3d 102, 168 [132 Cal.Rptr. 265] for the proposition that the resolution of a motion under section 995 does not permit an evidentiary hearing. They argue that the failure to reveal the witness statement was outside the record, and thus not appropriate for section 995 relief. The People misconstrue the state of the

record. The discovery order was a matter of record, as well as the fact that disclosure was not made until the second day of jury selection. Both the trial court and this court may take judicial notice of the record herein. (Evid. Code, §§ 452, 459.)" (*People* v. *Mackey, supra,* 176 Cal.App.3d at p. 186.)

This characterization of the record for section 995 review is aberrational. The record to be reviewed is solely the preliminary hearing transcript. In *Mackey,* as in this case, the prosecution's failure to disclose material favorable evidence was not discovered until long after the preliminary hearing. The record of the preliminary hearing obviously could not demonstrate the deprivation of a substantial right.

The *Mackey* court reached the correct result. However, its tortuous construction of what constitutes a record for section 995 review was unnecessary. It is neither useful nor appropriate to create an exception to the rule barring the introduction of evidence at section 995 hearings.[4] The proper procedural vehicle for setting aside the information was the second motion brought by Stanton, the pretrial nonstatutory motion to dismiss.

### III

At the hearing on the nonstatutory motion to dismiss, Stanton was properly granted the opportunity to make an evidentiary showing she had been deprived of a substantial right at the preliminary hearing. ■ "It is settled that denial of a substantial right at the preliminary examination renders the ensuing commitment illegal and entitles a defendant to dismissal of the information on timely motion. [Citations.]" (*People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 523 [165 Cal.Rptr. 851, 612 P.2d 941]; *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304].) In *Jennings* the defendant brought a standard section 995 motion because he was not allowed to cross-examine material witnesses against him at the preliminary hearing. The court found the denial of defendant's right of cross-examination constituted deprivation of a substantial right and rendered the commitment unlawful. (*Id.,* at pp. 875-876.)

---

[4] Stanton cites *Bayramoglu* v. *Superior Court* (1981) 124 Cal.App.3d 718 [176 Cal.Rptr. 487] as authority for conducting an evidentiary hearing at a 995 motion. In *Bayramoglu* the defendant brought a section 995 motion claiming he had been illegally committed because he was mentally incompetent at the time of his preliminary hearing. A comprehensive statutory scheme dictates how and when a criminal defendant's mental competency is to be assessed; as part of that scheme, a defendant demonstrably incompetent at his preliminary hearing is entitled to a dismissal under section 995. Hence *Bayramoglu* is both factually and legally distinguishable. Affording Bayramoglu an evidentiary hearing under the applicable statutes does not convert the case into authority for taking evidence as part of a section 995 motion raising prosecutorial deficiencies.

However, where, as here, the deprivation of a substantial right is not shown in the transcript of the preliminary hearing, the nonstatutory motion to dismiss is the proper device to raise the issue. Use of the nonstatutory or pretrial motion to dismiss has been sanctioned by our Supreme Court. "Although no clear California statutory authority provides for such a pretrial motion to dismiss, we have no doubt in light of the constitutional nature of the issue as to the trial court's authority to entertain such a claim." (*Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 294, fn. 4 [124 Cal.Rptr. 204, 540 P.2d 44].) A pretrial nonstatutory motion to dismiss is now accepted as an appropriate vehicle to raise a variety of defects. (See, e.g., *People* v. *McGee* (1977) 19 Cal.3d 948 [140 Cal.Rptr. 657, 568 P.2d 382]; *People* v. *Superior Court (Hartway)* (1977) 19 Cal.3d 338 [138 Cal.Rptr. 66, 562 P.2d 1315]; *People* v. *Durrett* (1985) 164 Cal.App.3d 947 [210 Cal.Rptr. 874]; *Lockwood* v. *Superior Court* (1984) 160 Cal.App.3d 667 [206 Cal.Rptr. 785]; *People* v. *Smith* (1984) 155 Cal.App.3d 1103 [203 Cal.Rptr. 196]; *People* v. *Crudgington, supra,* 88 Cal.App.3d 295.)

 We conclude Stanton was denied a substantial right by the prosecution's failure to disclose the investigative report. "Denial of cross-examination is a deprivation of a substantial right, rendering a holding order unlawful." (*People* v. *Mackey, supra,* 176 Cal.App.3d at p. 185.) The prosecution claims defense counsel thoroughly and exhaustively cross-examined the eyewitnesses to the collision and, therefore, failure to disclose the report did not deprive Stanton of a substantial right. This argument underestimates both the significance of the evidence withheld by the prosecution as well as the scope of substantial rights under *Jennings.*

Stanton unsuccessfully moved to have the felony charges reduced to a misdemeanor. (§ 17, subd. (b)(5).) She attempted to persuade the magistrate she was guilty of ordinary, rather than gross, negligence. The investigative report contained exculpatory evidence on that very issue.

Vehicular manslaughter with ordinary negligence, a misdemeanor, is defined as the "failure to use ordinary or reasonable care" while a driver "wholly indifferent to the consequences of his conduct" is guilty of gross negligence. (CALJIC Nos. 8.91, 8.92 (4th ed. 1979).) The prosecution was therefore careful to establish that Stanton made no effort to stop or attempt to avoid the collision, virtually assuring a finding of gross negligence as recited in *People* v. *Eagles* (1982) 133 Cal.App.3d 330, 338 [183 Cal.Rptr. 784]: "It is clear, too, that contrary to defendant's testimony he did not attempt to stop at the red light; there were no skid marks before the point of impact, an eyewitness testified that the car's brake lights, which were opera-

tional, did not come on, and a passenger in defendant's car said that he felt no braking or deceleration as the car entered the intersection. We can hardly imagine a more compelling showing of gross negligence. [Citation.]"

Each of the eyewitnesses here could have been vigorously cross-examined using the contents of the report withheld by the prosecution. Of critical importance was Kerwin's statement to the investigator only a month after the collision that she heard screeching and Stanton may have tried to stop. This directly contradicted her testimony at the preliminary hearing. Likewise, Ferris's testimony about Stanton's driving could have been impeached by his own admission he was not properly situated to see the rear of Stanton's car. And Fitzwater's entire story would have come under suspicion because of her admitted emotional trauma. Consequently, the undisclosed report contained exculpatory evidence on the focal issue before the magistrate and would have served the dual purpose of impeaching the prosecution's case *and* establishing an affirmative defense to the gross negligence.

Nondisclosure of evidence impeaching eyewitnesses on material issues is the deprivation of a substantial right under *Jennings*. (*People* v. *Mackey, supra,* 176 Cal.App.3d at p. 185.) The defense was unquestionably handicapped by the prosecutorial error. The magistrate, having heard the impeachment of the three key witnesses, might well have stricken the gross negligence allegation or granted the defense section 17, subdivision (b)(5) motion. Analogizing to the granting of a section 995 motion, Stanton claims once deprivation of a substantial right is found the ensuing commitment is illegal and the case must be dismissed. "The right to relief without any showing of prejudice [is] limited to pretrial challenges of irregularities. . . . If the issue is raised before trial . . . prejudice is presumed and the information is dismissed." (*People* v. *Pompa-Ortiz, supra,* 27 Cal.3d at p. 529.)

However, the *nonstatutory* motion to dismiss is an entirely different animal. Dismissal of the information, as conceded by defense counsel at argument, is not compelled. The undisclosed report contained information material only to a finding of gross negligence and therefore Stanton, at best, would have been entitled to a striking of that finding. She is entitled to nothing more from this writ proceeding.

Let a peremptory writ of mandate issue commanding the superior court to vacate its order denying Stanton's nonstatutory motion to dismiss and to enter a new order granting the motion and striking the gross negligence

allegation from the information. The alternative writ is discharged and the previous stay ordered by this court is dissolved.

Trotter, P. J., and Crosby, J., concurred.

On July 29, 1987, the opinion was modified to read as printed above.