Filed 11/18/24  P. v. Moore CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B327780 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA495627) |
| v. | |
| MAURICE LAVELL MOORE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Enrique Monguia, Judge.  Conditionally reversed and remanded with directions.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

The People charged defendant Maurice Lavell Moore with two counts of committing a lewd act on a friend's 11-year-old daughter with an allegation that he personally inflicted bodily injury on her.  Moore, who is Black, contended he was charged more heavily and offered a more severe plea agreement and negotiated sentence than similarly situated non-Black defendants who engaged in similar conduct.  He moved for discovery under the California Racial Justice Act of 2020 (Stats. 2020, ch. 317, § 1) (RJA).  The trial court denied the motion.

After the trial court denied his discovery motion, Moore pled no contest to committing a lewd act on a child under the age of 14 in violation of Penal Code[1] section 288, subdivision (a), and committing an act described in subdivision (a) by means of fear or unlawful bodily injury in violation of section 288, subdivision (b). The latter charge was enhanced by section 12022.8 allegations [infliction of great bodily injury] which Moore admitted.  Moore was sentenced to a term of 21 years: the high term of 10 years for violating subdivision (b) of section 288, enhanced by five years under section 12022.8, and the midterm of six years for violating subdivision (a) of section 288.

This appeal is from the judgment of conviction.  The trial court granted Moore's request for a certificate of probable cause. (*People v. Moore* (2003) 105 Cal.App.4th 94, 98–100 [certificate of probable cause required for appeal of denial of discovery].)

We conclude the trial court applied the wrong standard in denying the discovery motion.  We conditionally reverse the judgment and remand with directions to the trial court to apply

---

[1]     Undesignated statutory references are to the Penal Code.

the correct standard and to enter a new ruling on the motion. We express no opinion on the merits of the motion.

I.    **Factual Background**[2]

In December 2020, Moore was 32 years old. Moore is a trusted friend and occasional sexual partner of S.A., mother of T.H., the 11-year-old victim in this case. One night, Moore helped T.H. write a song. After Moore and T.H. finished their songwriting session, they laid in bed. Moore sucked T.H.'s breasts and rubbed her vagina. He removed their clothes, lubricated his penis, and had vaginal intercourse with T.H. Afterward, T.H. felt wet and noticed white liquid on her vagina. Moore left at about 3 a.m., telling T.H., "You have a good pussy."

One month later, in January 2021, Moore knocked on the door of S.A.'s apartment at midnight and asked T.H. if she wanted to go out somewhere. T.H. agreed and they snuck out while her mother slept. Moore took T.H. to a motel room he had previously rented and had vaginal intercourse with her.

T.H. had not menstruated and took a home pregnancy test. The results were positive. T.H. told her mother she and Moore had sex, but then said she was kidding. S.A. took T.H. to the doctor who confirmed the pregnancy. In February, T.H. told her mother the truth about Moore, and they returned to the doctor. An ultrasound confirmed that T.H. was about eight weeks pregnant. On February 22, 2021, T.H. underwent an abortion to terminate the pregnancy.

---

[2]    There was no preliminary hearing. The factual summary is drawn from the People's brief, which takes the facts from the probation report.

3

Tissue samples from the abortion were compared to appellant's DNA, confirming Moore was the father. Moore was arrested on May 19, 2021. He admitted he had gone to T.H.'s apartment one night when her mother was not at home and he had also taken T.H. to a motel without her mother's knowledge, but denied having sex with her.

## II. **The People's Offer of 21 Years**

Before the discovery motion was heard and decided, the People indicated they had offered Moore a prison term of 21 years in exchange for his plea of guilty or no contest.

## III. **Appellant's Motion for Discovery**

The motion made clear from the outset that it was based on the RJA, specifically section 745. Invoking subdivisions (a)(3) and (a)(4) of section 745, Moore contended statistical evidence showed that "people of one race are disproportionately charged or convicted of a specific crime or enhancement" and that "people of one race receive longer or more severe sentences, including the death penalty or life without parole." Discriminatory charging and sentencing were cited as the bases for Moore's motion for discovery.

Moore went on to cite *McCleskey v. Kemp* (1987) 481 U.S. 279 for its holding that to prove prejudicial discrimination there must be specific evidence of racist motivation or intent in the prosecution of the case. According to Moore, this holding effectively insulated racial discrimination from judicial review in contrast to the RJA, which was enacted to facilitate judicial review of racial discrimination in the administration of justice.

After stating statistics showing that Black Americans are incarcerated at a much higher rate than White Americans, Moore

4

provided multiple letters attesting to his good character together with the opinion of a psychologist that there was "no clinical evidence for Pedophilia or a pervasive inability to delay sexual gratification towards prepubescent girls on the part of Mr. Moore. Rather, the instant offense conduct appears situational in nature and not predatory."

Moore then detailed several cases involving non-Black defendants who committed sexual crimes with under-age children.

- Robert Cain, a police officer charged with unlawful sexual intercourse with a person under 16, was sentenced to a two-year prison term.
- Neil Kimball, a sheriff's deputy, pleaded guilty to committing a lewd act with a child for a sentence of three years.
- Miguel Schiappapietra, Jr., charged with a felony lewd act upon a child, was sentenced to three years in prison after pleading no contest.
- Paul Gonzales molested 13- and 14-year-old girls and was sentenced to three years.
- Cameron Thor, an acting coach, was sentenced to six years for lewd conduct with a 13-year-old female student.
- Naason Garcia was sentenced to 16 years after he pleaded guilty to two counts of forcible oral copulation and one count of a lewd act on a 15 year old. Garcia was also involved in human trafficking and forcing children to perform oral sex.
- Ms. Young, a female teacher accused of 10 counts of violating section 288, was sentenced to one year in the county jail and probation.

- Gina Murry, a teacher, was sentenced to two years for sexual assault on a 15-year-old student.
- Gabriela Cortez, a teacher, had sex with two of her students and was sentenced to probation.

The motion sought the following discovery:[3]

- (1) the race and gender of those charged with violating section 288, subdivision (a) [lewd acts upon a child], and the race and gender of the child;
- (2) the race and gender of those convicted of violating section 288, subdivision (a), who received probation;
- (3) the race and gender of those charged with violating section 288, subdivision (a), who received a prison sentence and the length of the sentence;
- (4) the race and gender of those charged with violating section 288, subdivision (i) [person convicted of section 288, subdivision (a), who personally inflicted bodily harm];
- (5) the race and gender of those convicted of violating section 288, subdivision (i), and the race and gender of the child;
- (6) the policies of the District Attorney's office to safeguard against racial and gender discrimination in charging decisions; and
- (7) the review process for Moore's case to ensure that the charging decision met present standards.

Citing legal authority, Moore contended discriminatory enforcement of the law may be a valid defense. He went on to cite the legal standard for discovery in selective prosecution

---

[3] The time period for discovery requests (1) through (5) was 10 years.

cases, concluding that the standard was "plausible justification." Moore closed by arguing that he had met the standard for discovery set out for selective prosecutions. The remedy he sought was a reduction of the charges.

## IV. The Trial Court's Ruling

The trial court applied the wrong standard to the discovery motion. This is evident from a review of the trial court's remarks before ruling on the motion. Those remarks are set forth in full below. The passages we conclude are indicative of the trial court's thinking are numbered. Our comments on the remarks follow.

"THE COURT: But I get the gist of the motion, and it is well written and so forth. But the gist of it is it's a preprelim offer. [1] <u>You're asking for me to do something as to what's really a sentencing issue and challenge the People's discretion in what their offer is.</u> The court normally doesn't get involved in that unless they're saying, well, there's a [2] <u>history of discrimination</u>, and you want to go back on, you know, for what number of years to see what their offers have been in similar-situated cases. That's all well and good.

"I mean, you are here to do justice. I'm here to do justice, but all I have is the case before me. Unless you can prove or show that there's something that I've done wrong or that the People have done wrong, we haven't even gotten to there yet. [3] <u>It's here for preliminary hearing</u>, and the key is discovery. <u>At what point must I order discovery that's going to lead to a potential defense or going to lead to something that would perhaps tip the scales in favor of the defense</u> should I consider holding your client to answer on these charges?

7

"I don't—I don't see that here. Even under [Evidence Code section] 352 I would say, well, not only is it irrelevant, [4] <u>it's immaterial for the issue of probable cause</u>. So you go back historically. I mean, come on, Mr. Grimes. I may be a little bit older than I look. Within my lifetime, they were stringing up your people and my people. We've gone through the sixties. We've gone through that.

"Yeah. It's an unfair system. There's a lot more of our people incarcerated in state prisons, juxtaposed to back in my youth, a while back, there was skit by Richard Pryor, and he went and did a benefit in an Arizona State prison. And he has this whole skit about his experience there. He comes out and says, 'Dang. Thank God for state prisons,' considering some of the individuals he ran across. So, yeah. It can be unfair, and other times, unfortunately, it's merited.

"Now, I don't know. I'm not passing judgment. It's not my role to pass judgment here. [5] <u>I'm just here to do the preliminary hearing to see if this case merits going on up to a real trial</u>—trier of fact, but, as to your motion here today, I, you know, I just don't see it. If I'm missing something, you can tell me, but [6] <u>I just think it's more of a discovery that has nothing to do and doesn't bear on the issue at hand for preliminary hearing. And only—and only if he were to be convicted would it be something to be taken up at sentencing.</u>

"But in terms of challenging the People's filing discretion and their discretion to consider or not consider certain factors in terms of the offer they choose to offer in this case preprelim or at the trial stage or after trial, what they will seek in terms of sentencing after the trial if it goes their way, you know, that's—that's a whole something else.

8

"It just isn't something that I have before me at this time, and, again, I understand the urgency here and the pressure because their offer is a determinate sentence. If the victim, I take it, comes in and testifies, then the offer's off the table. And then he's potentially facing multiple life terms, but we got an eleven-year-old that's impregnated. You know, as much as from your motion and, you know, she's a bad person, she's this, she's that—she's eleven years old, under the age of consent. So it's not even a consensual issue. [7] <u>Is he being treated unfairly as compared to other people with other charges?  Well, as counsel pointed out, she had an abortion.</u>  That's GBI, great bodily injury.

"MR. GRIMES [defense counsel]: I recognize all of that.

"THE COURT: So you know—and, again, [8] <u>you can file whatever you want in terms of sentencing at some future date, but we're not there yet.</u>

"So your motion is respectfully denied."  (Underscoring added.)

The motion was very clearly a motion for discovery under section 745, subdivision (d).  The trial court evidently thought so, as its remarks reflect.  Yet, the trial court ignored section 745 and case law interpreting that statute, as set out below.

The first remark of the trial court suggests that the court thought that the sought-for discovery was limited to sentencing.  The People's offer of a 21-year term was on the table.  The court may have been thinking about that.  But the discovery motion was not limited to sentencing.  Discovery was sought as to the entire case, including the charges.  In fact, the remedy the motion sought was a reduction of the charges.

The court's second remark shows that it was aware of the fact that it was dealing with the issue of discrimination.

The third, fourth and fifth statements suggest that the court did not think that the discovery sought had any relevance to the preliminary hearing and that a decision could be reached in the preliminary hearing without any reference to the alleged discrimination that was the subject of the discovery motion.

The sixth statement indicates that the court was aware that it was dealing with the issue of discrimination.

Finally, the seventh and eighth remarks again suggest that the court thought that the discovery sought was limited to sentencing.

We set forth below the standards that the trial court should apply in ruling on the motion for discovery.

V.    **The Discovery Provisions of the RJA**

The RJA provides statutory authority for defendants to challenge criminal proceedings on the basis of racial, ethnic or national origin discrimination. (*People v. Wilson* (2024) 16 Cal.5th 874, 943.)  Subdivision (d) of section 745 governs discovery under the RJA.  Section 745, subdivision (d), provides: "A defendant may file a motion requesting disclosure to the defense of all evidence relevant to a potential violation of subdivision (a) in the possession or control of the state.  A motion filed under this section shall describe the type of records or information the defendant seeks.  *Upon a showing of good cause*, the court shall order the records to be released.  Upon a showing of good cause, and in order to protect a privacy right or privilege, the court may permit the prosecution to redact information prior to disclosure or may subject disclosure to a protective order.  If a statutory privilege or constitutional privacy right cannot be

adequately protected by redaction or a protective order, the court shall not order the release of the records."  (*Ibid.*, italics added.)

 *Young v. Superior Court* (2022) 79 Cal.App.5th 138 (*Young*) includes a scholarly and excellent discussion of discovery in criminal cases generally and of subdivision (d) of section 745 specifically.  *Young* notes that "discovery in criminal cases is governed by a statutory scheme that, with certain specified exceptions, is designed to be reciprocal and exclusive.  (See §§ 1054, subd. (e) ['no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States'], 1054.5, subd. (a) ['[n]o order requiring discovery shall be made in criminal cases except as provided in this chapter'].)"  (*Young*, at p. 157.)  *Young* goes on to hold that because section 745, subdivision (d), is an express statutory provision authorizing "defense-side discovery," it is one of the exceptions to the general provisions governing discovery in criminal cases.  (*Young*, at p. 157.)

 *Young* notes that the court functions as a gatekeeper under subdivision (d) of section 745 in determining what constitutes "good cause" for discovery.  (*Young*, *supra*, 79 Cal.App.5th at pp. 157–158.)  *Young* provides a definition of good cause.  "The parties and amici curiae agree that the closest analogy is the good cause standard governing disclosure of law enforcement personnel records—*Pitchess*[4] discovery.  Similar to the disclosure regime under the [RJA], a defendant seeking *Pitchess* discovery must file a motion supported by affidavits showing 'good cause'

---

4 *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, superseded by statute as stated in *Long Beach Police Officers Assn v. City of Long Beach* (2014) 59 Cal.4th 59, 68.

for it." (*Young*, at p. 158, fn. omitted.)  Good cause under *Pitchess* exists when the defendant shows both a materiality to the subject matter of the pending litigation and a reasonable belief that the agency has the type of information sought.  (*Young*, at p. 158.)

"Included in the *Pitchess* 'good cause' calculus is the requirement for a defendant to establish a 'plausible factual foundation' for officer misconduct."  (*Young*, *supra*, 79 Cal.App.5th at p. 158.)  The *Young* court then concludes that the existing jurisprudence on *Pitchess* motions should also apply to discovery under the RJA: "We agree that a discovery-triggering standard similar to the standard applicable to *Pitchess* discovery motions under Evidence Code section 1043, subdivision (b), applies to section 745, subdivision (d) motions under the [RJA]. These two discovery provisions share a similar purpose, as each is designed to provide a defendant access to information that is uniquely in the possession of government officials.  We can presume that the Legislature was aware how courts have interpreted the meaning of good cause for *Pitchess* discovery and intended a similar standard to apply under the [RJA].  Thus, we conclude that in order to establish good cause for discovery under the [RJA], a defendant is required only to advance a *plausible factual foundation, based on specific facts, that a violation of the [RJA]* 'could or might have occurred' in his case."  (*Young*, at p. 159, italics added.)

The *Young* court went on to find that the "plausible justification" standard announced in the decision is in some respect even more relaxed than the relatively relaxed standard under Evidence Code section 1043, subdivision (b).  (*Young*, *supra*, 79 Cal.App.5th at p. 159.)  While a *Pitchess* motion must be supported by an affidavit

12

setting forth a reasonable belief that the requested discovery is material to the subject matter of the case, there is no comparable affidavit requirement for a discovery motion under section 745, subdivision (d). (*Young*, at p. 159.)

## VI. **The Trial Court's Use of An Incorrect Standard**

We generally review a trial court's ruling on discovery for abuse of discretion. We review the "factual underpinnings of a discretionary determination for substantial evidence [citation], but where such a determination rests on 'incorrect legal premises,' our review is de novo." (*Young*, *supra*, 79 Cal.App.5th at p. 156.) Nevertheless, some courts have held that the de novo standard of review applies to the trial court's legal conclusion that a defendant has failed to carry the burden of making a prima facie showing of good cause. (*People v. Erwin* (2021) 72 Cal.App.5th 90, 101; *People v. Howard* (2024) 104 Cal.App.5th 625.) Here, because the trial court made a legal error, we find error under both standards of review.

We are of course aware of the long-standing rule that the reasons for the trial court's decision will be ignored on appeal if the ruling was correct. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329; see generally 9 Witkin, Cal. Procedure (6th ed. 2024) Appeal, § 366.)

The rule foreclosing review of the reasons for a trial court's decision is subject to exceptions. One such exception is when the focus is on the means used to arrive at the decision. If the trial court mistakenly focuses on the wrong means to arrive at the decision, the rule does not

apply.  (*Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 611; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 369.)  In this case, in ruling on the discovery motion the focus must be on whether there is good cause for the discovery.  (§ 745, subd. (d).)  The trial judge completely ignored this consideration and for that reason, the ruling must be conditionally reversed.

The trial court's preoccupation with the preliminary hearing is regrettable.  The idea that the preliminary hearing was somehow exempt from the motion is unsupportable.  A defendant retains several substantial rights at the preliminary hearing.  These include the right to confront and cross-examine prosecution witnesses, a right to the effective assistance of counsel, a right to present evidence to establish an affirmative defense, negate an element of a charged crime, or impeach the testimony of a prosecution witness or the statement of a declarant testified to by a prosecution witness, and a right to due process.  (*Mills v. Superior Court* (1986) 42 Cal.3d 951, 959, abrogated by Proposition 115 on another point pertaining to admission of certain hearsay evidence.)  Selective prosecution based on race was an affirmative defense available to Moore at this stage of the proceedings. (*Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 300–301 ["a criminal defendant may object, in the course of a criminal proceeding to the maintenance of the prosecution on the ground of deliberate invidious discrimination in the enforcement of the law"].)  The prosecutor's failure to disclose all substantial material evidence favorable to an accused before the preliminary hearing violates due

14

process.  (*Stanton v. Superior Court* (1987) 193 Cal.App.3d 265, 269–270; *Bridgeforth v. Superior Court* (2013) 214 Cal.App.4th 1074, 1083–1084 [Proposition 115 did not limit or abrogate *Stanton* and similar cases pertaining to criminal discovery and preliminary hearings].)  It follows that a discovery request under the RJA pertaining to the affirmative defense of selective prosecution can be properly made before the preliminary hearing as the discovery may implicate whether the preliminary hearing should even go forward on the pending charges.  Indeed, section 745, subdivision (c), provides: "A motion made at trial shall be made as soon as practicable upon the defendant learning of the alleged violation."

## VII.  **Initial Resolution by the Trial Court**

The People contend that unprotected sexual intercourse with an 11-year-old girl resulting in a pregnancy and an abortion was "sufficient to distinguish this case as particularly egregious and justified appellant's charges and sentence based on the victim's youth and substantial bodily harm."  That the victim sustained bodily harm, according to respondent, is sufficient to distinguish this case from those listed in the motion for discovery.

These contentions, which are certainly worthy of consideration, need to be addressed in the first instance by the trial court.  (*People v. Coggan* (1957) 155 Cal.App.2d 42, 44 [it is not the function of reviewing court to weigh the evidence].)  That the Legislature has "prescribe[d] a comprehensive procedure for making and adjudicating a section 745 motion at the trial level" (*People v. Lashon* (2024) 98 Cal.App.5th 804, 813) is reason enough to require

15

the trial court in the first instance to adjudicate the motion under the correct standard. Unfortunately, the trial court did not address whether the victim and/or the defendant were similarly situated to the victims and defendants in the cases listed by the motion, whether any similarities are sufficient to provide a "plausible factual foundation" for the conclusion that a violation of the RJA based on charging decisions and sentencing offers could or might have occurred, or any other pertinent considerations arising out of the details of the specific examples.

## VIII. **The Remedy of Conditional Reversal**

Moore pleaded no contest and was sentenced to a term of imprisonment of 21 years. Our decision setting aside the ruling on the discovery motion has resurrected the issue of selective prosecution as one requiring a decision. Given that the motion is now pending, the plea and judgment of conviction must be conditionally set aside. If ultimately no violation of section 745, subdivision (a), is found to have occurred, the plea and judgment may be reinstated by the trial court

## DISPOSITION

The judgment is conditionally reversed with directions to the trial court to rule on the discovery motion applying the correct standard.  If no violation of section 745, subdivision (a), is found to have occurred, the plea and judgment may be reinstated by the trial court.  If a violation is found, the trial court shall conduct further proceedings as necessary.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.