Filed 7/14/25  P. v. White CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C097420 |
| v. | (Super. Ct. No. 20F6493) |
| ANTHONY PAUL WHITE, | |
| Defendant and Appellant. | |

Defendant Anthony Paul White had a series of confrontations with Andrew Fairchild, beginning at a post office, continuing at or near defendant's house, and ending in a store parking lot, where defendant pulled out a handgun, pointed it at Fairchild, and pulled the trigger.  The gun malfunctioned and did not fire.  After disarming defendant, Fairchild struck him several times while a store employee called 911.

At the preliminary hearing and in his initial testimony at trial, Fairchild denied that he had followed defendant to the area around defendant's house.  But during cross-examination at trial he ultimately admitted driving up to that area.  When defendant made motions to dismiss the case based on Fairchild's change in testimony, the trial court denied the motions.

1

A jury convicted defendant of attempted voluntary manslaughter, assault with a firearm, unlawful possession of a firearm, unlawful possession of ammunition, and making a criminal threat. The jury found that defendant personally used a firearm during commission of the attempted manslaughter, the assault with a firearm, and the criminal threat (counts 1, 2, and 5). In a bifurcated proceeding, the trial court found that defendant had a prior strike conviction within the meaning of the three strikes law, which also subjected him to an additional five-year serious felony enhancement. The trial court dismissed the prior strike conviction for purposes of three strikes sentencing, but declined to dismiss the serious felony enhancement and firearm enhancements. The trial court sentenced defendant to an aggregate determinate term of 12 years six months in state prison.

Defendant now contends (1) the trial court should have granted his motions to dismiss given Fairchild's perjury, (2) insufficient evidence supports the criminal threat conviction, and (3) the trial court abused its discretion in declining to dismiss all but one enhancement.

We will affirm the judgment. The trial court properly denied defendant's motions to dismiss. The evidence is more than sufficient to support his criminal threat conviction. And, contrary to defendant's argument on appeal, Penal Code[1] section 1385, subdivision (c)(2)(B) did not require the trial court to dismiss all but one enhancement. Instead, the trial court retained discretion to impose or dismiss the enhancements in furtherance of justice. Defendant has not demonstrated an abuse of that discretion.

BACKGROUND

At about 7:30 p.m. on October 2, 2020, Fairchild left his house in Shingletown to pick up some food for his family. On his way to the store, he stopped by the post office.

---

[1] Undesignated statutory references are to the Penal Code.

2

As Fairchild walked out of the post office, defendant pulled up in a truck with his high beam headlights on. Fairchild told him to turn his lights off. The two men exchanged insults and called each other derogatory names. Fairchild returned to his truck and sat there until defendant left. Defendant "revved up" his truck's engine and "acted like he was going to crash into" Fairchild's truck. Defendant drove out of the parking lot, turned right on Emigrant Trail, and turned left onto Highway 44, heading east toward his house. Fairchild testified that he followed defendant to the highway, did a "burnout" as he passed defendant's truck, then turned right onto the highway, heading west toward Fairchild's house. Fairchild yelled "dumbass" or "asshole" out of his window as he passed. According to defendant's testimony, however, Fairchild "nudged" the back of his truck while they were at the intersection. Fairchild then pulled up beside defendant's truck, threatened to kill him, and "did a complete donut" around defendant's truck, before turning right onto the highway.

As defendant drove to his house, located about three and a half miles east of where the confrontation began, Fairchild drove a short distance in the opposite direction before deciding to turn around and follow defendant. Fairchild either drove into defendant's driveway or turned around at a church that was across the street from defendant's house. Fairchild claimed he said, "Fuck you, asshole," then drove back down the hill toward town. Defendant claimed Fairchild pointed a gun at him and again threatened to kill him. Fairchild denied having a gun.

As Fairchild drove back to town, defendant admitted that he retrieved a gun from his safe and drove back into town looking for Fairchild. Defendant said he did so merely so that he could write down Fairchild's license plate number and notify law enforcement.

The confrontation resumed in a Dollar General parking lot. M.P., who worked at the store, testified that Fairchild came in "really irritated" and bought some items, including beer. After he left, M.P. heard what sounded like an argument in the parking lot. She went outside and saw defendant and Fairchild yelling at each other. M.P. told

3

them to stop, but they got louder and angrier. According to M.P. the yelling and screaming turned into pushing and shoving, during which Fairchild ripped defendant's shirt off. As they moved through the parking lot, M.P. followed and noticed that defendant had a gun in his hand. Defendant pointed the gun at Fairchild's head and said something like, " 'Do you want to fucking die tonight?' " M.P. then heard a "click" and a "ting." She had previously heard a gun misfire and said the sounds were similar. Immediately after hearing the sounds, M.P. saw Fairchild kick defendant in the chest, knocking him to the ground. Fairchild kicked the gun out of defendant's hand, got on top of him, and "proceeded to beat the crap out of him." M.P. called 911. During the phone call, Fairchild walked over to the gun, removed the bullets, and hit defendant with the gun several times. He then threw the gun and defendant's truck keys over a nearby fence. At M.P.'s insistence, Fairchild left the parking lot and drove to his house.

Sheriff's deputies responded to the parking lot. Defendant left before they arrived. In the parking lot, deputies found defendant's ripped shirt and five unfired .38-caliber rounds. One of the unfired rounds had an indentation on the primer consistent with "a primer strike," meaning that the firing pin struck the primer but did not cause the bullet to fire. Deputies found the gun, a .38-caliber revolver, on the other side of the fence where Fairchild threw it. A subsequent analysis of the revolver revealed that it was not operational. After collecting evidence at the scene and conducting interviews, deputies drove to defendant's house and arrested him. Defendant admitted driving into town looking for Fairchild and also admitted hitting him in the head with the gun. He repeated four or five times: " 'It was a stupid fucking decision.' " But at trial, defendant denied pointing the gun at Fairchild or pulling the trigger.

Additional background is set forth in the discussion as relevant to the contentions on appeal.

4

## DISCUSSION

### I

Defendant contends the trial court should have dismissed the convictions for attempted manslaughter, assault with a firearm, and making a criminal threat based on Fairchild's perjury at the preliminary hearing.

### A

Fairchild testified at the preliminary hearing pursuant to a grant of immunity under section 1324. His subsequent testimony at trial was largely consistent with his preliminary hearing testimony, with one exception: at the preliminary hearing, Fairchild denied following defendant up the hill toward his house. At trial, during his direct examination, Fairchild again denied following defendant to the area of his house, and repeated that denial during cross-examination. But then, toward the end of the cross-examination, after reminding Fairchild about his immunity agreement, defense counsel asked: "Did you go to [defendant's] house that evening?" Fairchild answered: "I drove up the hill. Yes." Fairchild described turning around at the church that was across the street from defendant's house. During redirect, Fairchild admitted yelling "Fuck you, asshole" at defendant as he was turning around and claimed that it was "a coincidence honestly" because he did not know where defendant lived.

The trial court stopped the proceeding when the prosecutor started questioning Fairchild about the possibility of being prosecuted for perjury. Outside the presence of the jury, the prosecutor stated he would be willing to offer Fairchild "another immunity agreement" covering his "perjury at the preliminary hearing." Counsel was appointed to confer with Fairchild during the break in the proceeding. After the break, the trial court stated that it had received a new petition for immunity covering Fairchild's perjury during the preliminary hearing and at trial. The prosecutor explained: "I was hoping that [Fairchild] would say that [he followed defendant to his house] because I think it fit more with the evidence, and it did not matter in the People's case whether or not that had

5

occurred.  [¶]  Given [Fairchild's] testimony today, I still would like to proceed.  It would not be my intention to prosecute him for perjury in any event given the circumstances of this case.  However, in an abundance of caution, I prepared a [section] 1324 order and request."  The trial court granted the request for immunity.

Defense counsel moved to dismiss the case, arguing, "what happened this morning . . . is outrageous, and I think it has infringed on [defendant's] due process rights, not just to a fair trial, but also to a fair preliminary hearing."  After hearing argument from the prosecutor, the trial court clarified with defense counsel that he was asking the court to dismiss the case in furtherance of justice under section 1385, and also because Fairchild's perjury at the preliminary hearing was such that "the preliminary hearing really didn't happen, in essence."  Defense counsel answered:  "Correct."  The prosecutor then added that the latter argument could be raised in "a [section] 995 motion."  The trial court asked the parties to brief the issues and noted that Fairchild's admission that he followed defendant to his house was helpful to the defense, so the trial court would have to consider whether there was any prejudice.  The trial court said it was clear the prosecutor did not know or anticipate that Fairchild would change his testimony during trial.

The parties briefed the issues as requested.  Defendant filed a section 995 motion to dismiss counts 1, 2, and 5 (attempted murder, assault with a firearm, and making a criminal threat), and also filed a nonstatutory motion to dismiss those counts, arguing that Fairchild's perjury deprived defendant of his substantial rights to present a defense and cross-examine witnesses.  Defendant also argued that because of the perjury, he was not legally committed within the meaning of section 995, requiring dismissal without a showing of prejudice.  In the alternative, defendant asked the trial court to review the preliminary hearing transcript without considering any of Fairchild's testimony and determine if there was probable cause to hold defendant to answer.  In response, the

6

People argued defendant was not denied a substantial right warranting dismissal, and defendant had not shown prejudice.

After holding a hearing, the trial court denied defendant's section 995 and nonstatutory motions to dismiss. Because we review the trial court's rulings and not its reasoning, we need not recite that reasoning here. (See *People v. Armstrong* (1991) 232 Cal.App.3d 228, 241-242 (*Armstrong*).)

B

"Denial of a substantial right at the preliminary hearing renders a defendant's commitment illegal and entitles him to a dismissal of the information on timely motion. [Citations.] Deprivation of a substantial right is properly addressed by a section 995 motion when the error is visible from the 'four corners' of the preliminary hearing transcript. By contrast, an error that is not known or visible at the hearing itself . . . may be called to the court's attention through a nonstatutory motion to dismiss." (*People v. Duncan* (2000) 78 Cal.App.4th 765, 772; see *Stanton v. Superior Court* (1987) 193 Cal.App.3d 265, 271 (*Stanton*) ["where, as here, the deprivation of a substantial right is not shown in the transcript of the preliminary hearing, the nonstatutory motion to dismiss is the proper device to raise the issue"].)

Fairchild's perjury was not known at the time of the preliminary hearing and is not visible from the transcript of that hearing. The perjury was only discovered at trial, when he admitted lying at the preliminary hearing. Thus, this case is different from *Jennings v. Superior Court* (1967) 66 Cal.2d 867 (*Jennings*), where the errors were immediately visible at the preliminary hearing when the trial court prevented the defendant from presenting a defense witness and from effectively cross-examining the principal prosecution witnesses, depriving the defendant of substantial rights at the preliminary hearing. (*Id*. at pp. 875-878; see also *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 526 (*Pompa-Ortiz*) [denial of the right to a public preliminary hearing could be raised by section 995 motion to dismiss].)

7

The nonstatutory motion to dismiss was the appropriate vehicle to raise defendant's claim that Fairchild's perjury at the preliminary hearing deprived defendant of substantial rights by preventing him from presenting an affirmative defense when defense counsel was unable to meaningfully cross-examine Fairchild. However, unlike in *Stanton, supra*, 193 Cal.App.3d 265, where the defendant was deprived of the substantial right to cross-examine certain prosecution witnesses at the preliminary hearing by *the prosecution's* failure to disclose an investigative report casting doubt on the witnesses' credibility (*id*. at pp. 268, 271), here, Fairchild's perjury was not known to the prosecution at the time of the preliminary hearing, and there is no evidence that the prosecution withheld evidence that would have cast doubt on Fairchild's credibility at the preliminary hearing.

In that regard, this case is more analogous to *People v. Brice* (1982) 130 Cal.App.3d 201 (*Brice*), in which the appellate court rejected the defendant's assertion that the prosecution committed misconduct by relying on perjured testimony at the preliminary hearing. (*Id*. at p. 210.) The court explained that "[t]he record is devoid of evidence which would support a conclusion that the district attorney knowingly elicited false testimony . . . at the preliminary hearing." (*Ibid*.) The court also explained that "it cannot be said that the prosecutor knowingly *relied upon* perjured testimony in the filing of the information." (*Id*. at p. 211.) Moreover, the defendant "took full advantage of his opportunity to impeach [the witness's] trial testimony and the jury was well aware of her inconsistent testimony." (*Ibid*.) Similarly, here, there is no evidence the prosecution knowingly elicited false testimony from Fairchild at the preliminary hearing. And, as we explain immediately below, there is no showing of prejudice.

It is only where "the defendant makes a timely motion to dismiss and brings the matter [to the reviewing court] on a petition for writ of prohibition" that "he is entitled to [relief from the unlawful commitment] without further showing." (*Jennings, supra*, 66 Cal.2d at p. 881.) However, where the matter proceeds to trial, the defendant

8

"will ordinarily receive a fair trial if correct rulings are thereafter made at the trial on the merits; in that event, on an appeal from a judgment of conviction the errors may be found to have been cured in the subsequent proceedings." (*Id*. at pp. 880-881.) In other words, reversal of a judgment after trial is required "only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination." (*Pompa-Ortiz, supra*, 27 Cal.3d at p. 529.)

*People v. Becerra* (2008) 165 Cal.App.4th 1064 is instructive. There, the appellate court held that the defendant was not prejudiced by perjury during grand jury testimony because "the trial jury heard about the witness's perjury and still found defendant guilty beyond a reasonable doubt." (*Id*. at p. 1067.) The court elaborated: "The prosecution elicited at trial an admission from [the witness] that he had lied to the grand jury about not being present at the murder scenes. The defense cross-examined [the witness] vigorously on his perjury. The trial jury, after being informed of [the] perjury, nevertheless found beyond a reasonable doubt that defendant committed the . . . murders as well as the other crimes. Defendant thus suffered no prejudice at trial from [the witness's] grand jury perjury, rendering any error in the grand jury proceeding harmless." (*Id*. at p. 1071; see also *Brice, supra*, 130 Cal.App.3d at p. 210 [defendant made no showing that any "illegality at the preliminary hearing prejudiced him at trial"].)

Here, any assumed deprivation of a substantial right at the preliminary hearing was harmless. Defense counsel's cross-examination of Fairchild at trial was very effective. Fairchild came clean and admitted following defendant up the hill toward his house and continuing the confrontation there. That revelation was beneficial to defendant and caused the prosecutor to apologize to the jury for misstating what the evidence would show during his opening statement. Fairchild's admitted perjury at the preliminary hearing also allowed defense counsel to argue to the jury that it should disbelieve everything Fairchild had said about his confrontation with defendant that night. Defendant received a fair trial. And after hearing all of the evidence, a properly

9

instructed jury acquitted defendant of attempted murder, found him guilty of attempted voluntary manslaughter, and also found him guilty of the remaining charges. There was no prejudice.

Defendant further argues the trial court denied his motions to dismiss based on an erroneous standard. However, as already indicated, we review the trial court's rulings and not its reasoning. (*Armstrong, supra*, 232 Cal.App.3d at pp. 241-242.) Moreover, as also explained, on appeal from a judgment of conviction, defendant must show prejudice. He has not done so.

II

Defendant next claims the evidence is insufficient to support his criminal threat conviction.

"When the sufficiency of the evidence is challenged on appeal, we apply the familiar substantial evidence rule. We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859 (*Ryan D.*).) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

"[S]ection 422 makes it a crime to 'willfully threaten to commit a crime which will result in death or great bodily injury to another person' under specified circumstances . . . ." (*People v. Toledo* (2001) 26 Cal.4th 221, 224.) The crime has five elements: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the

10

threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*Id*. at pp. 227-228.)

Fairchild testified that defendant walked over to him in the Dollar General parking lot, pulled a gun out from behind his back, and said he was going to kill him. M.P. testified that defendant, while pointing the gun at Fairchild's head, said "something along the lines of, 'Do you want to fucking die tonight?' " Defendant acknowledges this testimony, but argues his statement was "rhetorical" and "could hardly be considered an expression of 'intent to inflict serious evil' on Fairchild which would instill sustained fear in a reasonable person." We are not persuaded.

Whether defendant directly said he was going to kill Fairchild, or instead asked if he wanted to die, is of no consequence. Either way, it amounted to a criminal threat. As this court explained in *Ryan D.*, "the communication and the surrounding circumstances are to be considered together. 'Thus, it is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422.' [Citations.]" (*Ryan D., supra*, 100 Cal.App.4th at p. 860.) The surrounding circumstances include, among other things, "the manner in which the communication was made" and "the actions of the accused after making the communication." (*Ibid*.) "I'm going to kill you" is not ambiguous at all. "Do you want to fucking die tonight?" is also sufficiently clear when viewed in the context of defendant pointing a gun at Fairchild's head and then pulling the trigger. There can be no doubt that this evidence supports a finding that defendant willfully threatened to commit a crime

that would result in death or great bodily injury. (See *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1348.) The evidence also supports a finding that he did so with the specific intent that his statement be taken as a threat. Indeed, as in *Fierro*, we can perceive no rational explanation for defendant's actions and accompanying utterance unless he "had the specific intent that [Fairchild] interpret his actions as a threat." (*Ibid*.) We also have no difficulty concluding that the threat was, both on its face and under the circumstances in which it was made, sufficiently unequivocal, unconditional, immediate, and specific to convey to Fairchild a gravity of purpose and an immediate prospect of execution. The jury could reasonably have concluded this was no mere emotional outburst or angry utterance, but rather an attempt to instill fear. (*Ryan D.,* at p. 861.)

The final two elements are also supported by substantial evidence. Defendant argues that Fairchild was not in sustained fear because he thought the gun was "a toy gun." However, although Fairchild testified that he initially thought the gun was fake, he also "assumed the worst" and was "pretty scared." Defendant then struck him in the head with it, which revealed to Fairchild that the gun was in fact real. During the subsequent fight in the parking lot, Fairchild became "really scared" that defendant would shoot him, thereby following through on the threat. And even after he disarmed defendant and drove home, Fairchild was still "pretty freaked out" as he described the events to the deputy who took his statement, evidencing " 'sustained fear,' " which simply "means a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 [15 minutes amounted to sustained fear where the defendant was armed and threatened to kill the victim and her daughter].) Moreover, there can be no doubt that Fairchild's fear was reasonable under the circumstances.

Defendant points to Fairchild's testimony that he was afraid of being sent back to prison for violating his parole. Two things can be true. That testimony does not necessarily detract from Fairchild's testimony that he was scared defendant would shoot

12

him.  The fact that Fairchild was also afraid of being sent back to prison does not undermine the jury's finding of reasonable, sustained fear stemming from the threat.

## III

In addition, defendant claims the trial court abused its discretion in declining to dismiss the serious felony enhancement and the firearm enhancements attached to counts 1, 2, and 5.  The claim contains two sub-arguments, which we address in turn.

## A

Defendant argues "the plain language of section 1385, subdivision (c)(2)(B) required the trial court to strike all but one of the enhancements."  Not so.

Senate Bill No. 81 (2021-2022 Reg. Sess.) "amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice.  (Stats. 2021, ch. 721, § 1.)" (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.)  As amended, section 1385, subdivision (c)(1) states:  "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."

Section 1385, subdivision (c)(2) lists nine mitigating circumstances and states in relevant part:  "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in paragraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  Subdivision (c)(2)(B) sets forth the following mitigating circumstance: "Multiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed."  (§ 1385, subd. (c)(2)(B).)

In *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*), the California Supreme Court held that section 1385 "does not erect a rebuttable presumption in favor of

dismissal that can only be overcome by a finding that dismissal endangers public safety." (*Id*. at p. 1033.) Instead, so long as the trial court "assigns significant value to the enumerated mitigating circumstances when they are present" (*id*. at p. 1029), "trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.' " (*Id*. at p. 1033.) Moreover, in *People v. Mazur* (2023) 97 Cal.App.5th 438, review dismissed after *Walker* was decided, the appellate court held that "the 'shall be dismissed' language of the mitigating circumstances in subdivisions (c)(2)(B) and (C)—read in the context of the statute as a whole—only requires the court to dismiss the enhancement if it first finds that dismissal is 'in the furtherance of justice.' [Citation.]" (*Mazur,* at p. 445.) This is because "the statutory phrase 'shall be dismissed' in section 1385, subdivisions (c)(2)(B) and (C) cannot be read in isolation. [Citations.] Construed as a whole, the statute makes clear that all the mitigating circumstances listed in subdivision (c)(2) merely guide the court's discretion in determining whether a dismissal is in furtherance of justice. Subdivision (c)(1) first sets forth the controlling 'furtherance of justice' standard for dismissal. Subdivision (c)(2) then states that the court must give great weight to the presence of any one or more of the nine listed mitigating circumstances '[i]n exercising its discretion' whether to dismiss." (*Mazur,* at p. 445.)

Thus, the fact that multiple enhancements were found true in this case did not automatically require the trial court to dismiss all but one enhancement. Instead, the trial court was required to give great weight to the fact that multiple enhancements were found true, not as an aggravating factor, but as a mitigating factor, which would "generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' [Citation.]" (*Walker, supra*, 16 Cal.5th at p. 1038.)

14

B

Defendant further contends the trial court "was unaware that it had discretion to strike the five-year [serious felony] enhancement."

After dismissing defendant's prior strike for purposes of three strikes sentencing, the trial court stated its tentative intended sentence on the record. The trial court explained that defendant was ineligible for probation and did not overcome that ineligibility. During that explanation, the trial court pointed out that defendant actively engaged and continued to engage in the confrontation with Fairchild, including by retrieving a firearm that he was not allowed to possess, advancing on Fairchild with that firearm in the parking lot, and pulling the trigger.

Turning to the intended sentence, the trial court stated that it would impose the low term of one and a half years for the attempted voluntary manslaughter (count 1). It selected the low term based on childhood trauma and certain mental health conditions being contributing factors in the commission of the offense. The trial court stated with respect to the serious felony enhancement: "I am required to impose the enhancement and discretionarily, I don't believe I have a basis to strike the enhancement, which is five years. Let me say that differently. *Exercising my discretion, I will not strike the enhancement*." The trial court then cited *People v. Turner* (1998) 67 Cal.App.4th 1258, a case decided at a time when the serious felony enhancement was mandatory and could not be stricken. (*Id*. at pp. 1268-1269.) The trial court also stated that it intended to impose the three-year firearm enhancement, for a total base term of nine years, six months. The remainder of the intended sentence would be: one year for the assault with a firearm (count 2), plus one year, four months for the firearm enhancement attached to that count, plus eight months for unlawful possession of a firearm (count 3). Sentences imposed for counts 4 and 5 would be stayed.

During argument, the prosecutor reminded the trial court that it had discretion under section 1385 to strike the firearm enhancements, but asked the court "not to use its

discretion" to do so. The trial court then stated: "*So if I use my discretion, I maintain where I'm at.*" With respect to striking enhancements, defense counsel asked the trial court to strike all enhancements. Defense counsel argued: "If you look at . . . [s]ection 1385 and why the Legislature, you know, has changed, and made these assessments, there are these enhancements, *discretionary now*, I think [defendant's] case is . . . looking at about 75 percent of a sentence is going to be enhancement based." Defense counsel argued that the same reasoning applicable to dismissing the prior strike for purposes of three strikes sentencing also applied to striking the serious felony enhancement. Defense counsel added that section 1385, subdivision (c)(2)(B) required dismissal of "all enhancements beyond a single enhancement." Defense counsel then pointed to other factors listed in that section, such as where the current offense was connected to mental illness, or there was childhood trauma, or where the firearm was inoperable. Defense counsel argued those factors supported a grant of probation, but if the trial court was not going to do that, it should at least dismiss all three enhancements, adding: "I think [section] 1385 provides a . . . framework of why you should do that and how you can do that." Later in the argument, the prosecutor reiterated that "the [section] 1385 factors which are now in place" supported the trial court's decision not to strike any enhancements. In response, defense counsel argued, "not to rehash everything I just said, but the . . . five-year enhancement is old, the firearm was inoperable, this was such a unique, wild situation that [defendant] . . . should get every benefit that the law allows . . . ." The trial court declined to "exercise discretion in a way that would strike an enhancement" and it imposed the intended sentence.

In announcing its intended sentence, the trial court said, "Exercising my discretion, I will not strike the enhancement." But even if the trial court initially believed it had no discretion to dismiss the serious felony enhancement, the parties repeatedly informed the trial court that it possessed such discretion, and the trial court clearly stated that it declined to strike any enhancements. The record supports a conclusion that the

16

trial court was aware of its discretion to dismiss the enhancements under section 1385, including the serious felony enhancement, and declined to do so.

We also conclude that defendant has not demonstrated an abuse of that discretion. Although the trial court did not specifically state that it was giving great weight to the mitigating circumstances identified by defense counsel at the sentencing hearing, defendant's sentencing brief clearly identified that as the appropriate standard. Absent a showing to the contrary, we presume the trial court was aware of and followed applicable law. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) We must presume the trial court found countervailing factors that neutralized the great weight of the mitigating circumstances, such that dismissal of the enhancements was not in furtherance of justice. (*Walker, supra*, 16 Cal.5th at p. 1038.) Many such countervailing factors exist in this case. The crime involved the threat of great bodily harm. (Cal. Rules of Court, rule 4.421(a)(1).) Defendant was armed with, and used, a firearm. (*Id*., rule 4.421(a)(2).) Defendant engaged in violent conduct indicating a serious danger to society. (*Id*., rule 4.421(b)(1).) Defendant has a lengthy criminal record and has served a prior prison term. (*Id*., rule 4.421(b)(2), (3).) During the sentencing hearing, the trial court noted the grave nature of the offense, defendant's inability to disengage from conflict, both during the present offense and during a prior battery offense that occurred in 2017, defendant's decision to arm himself and use a firearm even though he was prohibited from possessing such a weapon, and defendant's history of "criminality that spans every decade of [his] life."

Discretion is abused when "the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." (*People v. Thompson* (1994) 24 Cal.App.4th 299, 308.) Defendant has not shown an abuse of discretion.

17

DISPOSITION

The judgment is affirmed.

_____/S/_____
MAURO, J.

We concur:

_____/S/_____
EARL, P. J.

_____/S/_____
HULL, J.